James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

LOCAL UNION 400, BAKERY & CONFECTIONERY WORKERS' INTERNATIONAL UNION OF AMERICA, AFL-CIO, Defendant-Appellee.

No. 72–2231.

United States Court of Appeals, Ninth Circuit.

Jan. 9, 1974.

William D. Keller, U. S. Atty., Phillip S. Malinsky, Asst. U. S. Atty., Los Angeles, Cal., Walter H. Fleischer, Joseph B. Scott (argued), E. Grey Lewis, Acting Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Hirsch Adell, Charles K. Hackler (argued), Marylove Maloney Lee, Warren, Adell & Miller, Los Angeles, Cal., for defendant-appellee.

Before BROWNING and WRIGHT, Circuit Judges, and SOLOMON,* District Judge.

BROWNING, Circuit Judge.

In Wirtz v. Local 153, Glass Bottle Blowers, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968), a union held an unsupervised election after the Secretary of Labor had filed a civil action under section 402(b) of the Labor-Management Reporting and Disclosure Act of 1959, charging that violations of section 401 had occurred in an earlier election. The Court held that the union's unilateral act of holding a new unsupervised election after an action was filed did not deprive the Secretary of his right to a court-ordered election under his supervision. We hold that the same rule applies if the union unilaterally conducts a second election before the Secretary files suit but after a union member has filed a proper complaint under section 402(a) of the Act.

Section 401 of the Act, 29 U.S.C. § 481, imposes certain requirements with respect to the election of union officials, designed to insure democratic control of union affairs. Section 402, 29 U.S.C. § 482, provides for the enforcement of these requirements: subsection (a) provides that a member of a union who has either exhausted internal union remedies with respect to an alleged section 401 violation or has attempted to do so but has not obtained a union decision within three months may file a complaint with the Secretary of Labor within one month thereafter; subsection (b) provides that the Secretary shall investigate the complaint and, if he finds probable cause to believe a section 401 violation has occurred "and has not been remedied," shall file an action against the union within 60 days; and subsection (c) provides that if the court finds a violation has occurred that "may have affected the outcome" of the challenged election, the court shall declare that election void and order a new election conducted "under supervision of the Secretary."

In this case the challenged election was held in June, 1970. An unsuccessful candidate filed a timely protest, but the union did not render a decision on the protest within three months. On October 16, 1970, the protesting union member filed a complaint with the Secretary of Labor.

On Octobr 28, the Secretary notified the union that he had found probable cause to believe section 401 had been violated during the June election. The Secretary told the union it could avoid an action under section 402(b) either (1) by consenting to a new election conducted under the supervision of the Sec-

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

retary, or. (2) by holding a new election without supervision, provided this election was conducted in full compliance with section 401 and was completed by December 5, ten days before the expiration of the statutory 60-day period for filing suit.

The union declined to consent to a supervised election. Instead, it notified the Secretary that a new election would be held, but that it would not be completed until seven days after the deadline fixed by the Secretary. The second election was completed as scheduled on December 12, with the same results as the challenged June election. On December 15, the last day of the statutory period for filing suit, the union informed the Secretary of the completion of the new election.

The Secretary filed this action the same day. He alleged violations of section 401 in the June, 1970 election that "had not been remedied at the time of institution of this action." The Secretary asked that the June election be declared void and that the union be directed to conduct a new election under the Secretary's supervision.

Each party moved for summary judgment. The district court granted the union's motion, and the Secretary appealed.

The union does not challenge the sufficiency of the protesting union member's complaint to the Secretary regarding the June election.

It also concedes there was probable cause to believe that section 401 was violated in the June election. The union contends, however, that the completion of the December election before the Secretary filed suit "remedied" the earlier violations within the meaning of section 402(b). Noting that the Secretary does not attack the validity of the second election in this action,[1] and that no union member filed a timely protest to the second election,[2] the union argues "[t]he uncontested validity of the second election deprives the Secretary of any grounds to contest the first, for a condition precedent to his bringing an action is an *unremedied* violation."

It seems to be the union's view, in short, that the statutory prerequisites for a court-ordered supervised election must be established as to the second election, including, apparently, the requirement that the Secretary act only upon the complaint of a member of the union who has exhausted internal union remedies.[3] The Secretary's position is that a union's statutory right to avoid a supervised election by remedying a violation of section 401 ends when a member's protest is rejected or left unresolved by the union and a timely complaint is filed with the Secretary; the Secretary's right to a court order requiring a supervised election cannot be displaced thereafter by any unilateral action of the union.

We believe the Secretary's interpretation is more consistent with the statute's

1. The Secretary stated, in answer to an interrogatory, that "the second election did not fully meet all the requirements of Title IV of the [Act]." The union, however, claims this statement is insufficient to contest the validity of the second election, because there is no allegation that any violations "may have affected the outcome" of the second election. *See* § 402(c) of the Act, 29 U.S.C. § 482(c).

2. The complaining member filed a protest with the union regarding the December election, but apparently not within the time fixed by the union's internal rules. He also filed a complaint with respect to the December election with the Secretary.

3. It is possible that the union's position, at least alternatively, is only that in order to succeed in an action on the first election the Secretary must allege and prove with specificity why the second election was ineffective as a remedy. This interpretation would not necessitate compliance with the statute's procedural requirements as to the second election in order to attack the first election. Since we agree with the Secretary that the union's opportunity to remedy its illegal actions unilaterally is cut off by the proper filing of a complaint with the Secretary, we reject this position as well as the more extreme position stated in the text.

language and better serves the congressional purpose.

■ Section 402 provides, as we have seen, that a member "who has exhausted the remedies available under the constitution and bylaws" of his union may file a complaint with the Secretary. The statute continues, "The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied he shall, within sixty days after the filing of such complaint, bring a civil action."

The ordinary meaning of this language is that the determinations required of the Secretary relate to conditions existing prior to the filing of the union member's complaint: The Secretary is to determine whether there is probable cause to believe that section 401 was violated in the conduct of a union election and, if so, whether the violation was remedied in the course of the required exhaustion of the union's internal grievance procedures. The 60-day provision limits the Secretary's right to file an action, but nothing in the wording suggests that it also extends the time during which the union may remedy earlier violations.

Turning to the statutory purpose, it is true that Congress "intended to foster a situation in which the unions themselves could remedy as many election violations as possible without the Government's ever becoming involved. Achieving this objective would not only preserve and strengthen unions as self-regulating institutions, but also avoid unnecessary expenditure of the limited resources of the Secretary of Labor." Hodgson v. Local 6799, Steelworkers, 403 U.S. 333, 339, 91 S.Ct. 1841, 1845, 29 L.Ed.2d 510 (1971).

It is equally clear, however, that the means adopted by Congress to accomplish this purpose was the requirement of section 402(a) that a union member exhaust his internal union remedies before seeking the aid of the Secretary. Hodgson v. Local 6799, Steelworkers, *su-*

*pra. See also* Wirtz v. Local 153, Glass Bottle Blowers, *supra,* 389 U.S. at 472, 88 S.Ct. 643, 19 L.Ed.2d 705; Note, Union Elections and the LMRDA: Thirteen Years of Use and Abuse, 81 Yale L.J. 409, 474 (1972); Note, Labor Law —The Enforcement Power of the Secretary of Labor under Section 402 of the LMRDA, 1971 U.Ill.L.F. 745, 756. If the union's power to unilaterally remedy election violations also extended into the period after union grievance procedures had been unsuccessfully exhausted and a complaint filed with the Secretary, the accomplishment of Congress' objectives would be impeded, not advanced.

■ Once a protesting union member has exhausted his union remedies and filed a timely complaint with the Secretary, it is too late to avoid government intervention. It is also too late to avoid a needless expenditure of the Secretary's limited resources. The Secretary is already involved, how deeply depending on the speed with which the Secretary has moved in the particular instance. In the present case, for example, before the Secretary received telephonic notice of the completion of the second unsupervised election he had completed his investigation of the alleged violations, made his finding of probable cause, determined that the violations had not been remedied, conferred with the union, and prepared and filed suit.

Further, union self-government would be hampered rather than fostered by the construction suggested by appellant.

The union argues to the contrary, distinguishing *Bottle Blowers* on the ground that in that case the second election was a regularly scheduled biennial election, held after the action was filed, while in this case the second election was a special remedial election undertaken solely to cure the defects of the first and held before suit was filed. Unlike the second election in *Bottle Blowers,* the union argues, the second election in this case furthered the congressional purpose of strengthening union self-government by permitting un-

ions to police their own affairs and correct their own deficiencies. But "it is disingenuous at best" to argue that it is "an exercise of responsible union self-government" for the union to call a special election only after it has been notified that the Secretary has found probable cause to believe the union has violated the law. Hodgson v. Local 1299, Steelworkers, 453 F.2d 565, 576 (6th Cir. 1971).

Moreover, unless deferring action until the Secretary finds probable cause and is about to file suit would increase the risk of a court-ordered supervised election, there would be little incentive for the union to provide an effective remedy in any but the most egregious cases, or to provide such a remedy at an early stage. Conversely, if affording an effective remedy in the course of the union's internal grievance proceeding is the only way in which the union can be sure to avoid a court-ordered election under the Secretary's supervision, the union has a substantial incentive to respond quickly and effectively to the legitimate protests of its members.[4]

In addition, the construction of section 402 apparently urged by appellant would permit a recalcitrant union to delay or even preclude effective enforcement of section 401. Such a union, by holding an unsupervised "remedial" election after notice of probable cause was received from the Secretary but before an action was filed, could compel the protesting member to file a new grievance, again exhaust union remedies, and refile his complaint with the Secretary if he still wanted government interven-

tion. The Secretary, in turn, would be required to conduct a new investigation and make new findings regarding probable cause and the lack of remedial action. The time lost would be substantial. Note, *supra*, 81 Yale L.J. at 533, App.D. The longer the supervised election was delayed, the more likely it would be that those who had gained office through the tainted election would become entrenched and difficult to unseat. Moreover, a defiant union could avoid ever submitting to a supervised election by repeatedly holding unsupervised "remedial" elections after internal remedies were exhausted on each previous election but before an action was filed.

Because of this potential for delay and obstruction, the interpretation suggested by the union would seriously weaken the bargaining power of the Secretary and thus impede the attainment of two congressional objectives. Congress expressed a preference for an election supervised by the Secretary as the remedy for section 401 violations, believing that "only a supervised election could offer assurance that the officers who achieved office as beneficiaries of violations of the Act would not by some means perpetuate their unlawful control." *Bottle Blowers, supra,* 389 U.S. at 474, 88 S.Ct. at 650. And Congress hoped to achieve a maximum of voluntary compliance, the objective being "not a lawsuit but . . . 'aid in bringing about a settlement through discussions before resort to the courts.'" *Bottle Blowers, supra,* at 472, 88 S.Ct. at 649, *citing* Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).[5] If a union

---

4. Any interpretation of the statute which discouraged effective internal union redress would be unfortunate. Internal union relief provides the quickest redress of election violations. The Election Labyrinth: An Inquiry into Title IV of the LMRDA, 43 N.Y. U.L.Rev. 336, 363, 373 (1968). Litigation, on the other hand, entails delays so protracted that the judicial remedy has been called a "hollow pretense." Rauh, LMRDA —Enforce It or Repeal It, 5 Ga.L.Rev. 643, 647 (1971). *See* Wirtz v. Operating Engineers Locals 410, 410A, 410B, 410C, 366 F.

2d 438, 444 (2d Cir. 1966). Also, some members with strong union ties will not go outside the union for redress and thus are dependent on effective internal remedies. The Election Labyrinth, *supra*, at 363, 373.

5. A large percentage of the complaints in which the Department of Labor finds probable cause to believe that election violations have occurred are settled before an action is filed. Note, Election Remedies under the Labor-Management Reporting and Disclosure Act, 78 Harv.L.Rev. 1617 (1965) ; Note,

could defeat the Secretary's cause of action by unilaterally undertaking an unsupervised election after the Secretary found probable cause, the union would have little reason to engage in settlement discussions with the Secretary, and even less to agree to a supervised election.

To minimize these problems the Secretary would be compelled to file suit as quickly as possible after receipt of a complaint of section 401 violation. This course would, in itself, seriously reduce the possibility of negotiated settlements (cf. Note, Waivers of the LMRDA § 402(b) 60-Day Time Limit, 1971 Duke L.J. 1199, 1223), and result in the filing of ill-considered and unnecessary suits, needlessly burdening the Secretary, the unions, and the courts.

The conclusion we reach is foreshadowed by the Supreme Court's language in *Bottle Blowers*: "[I]t is incorrect to read these provisions circumscribing the time and basis for the Secretary's intervention as somehow conditioning his right to relief once that intervention has been properly invoked. Such a construction would ignore the fact that Congress, although committed to minimal intervention, was obviously equally committed to making that intervention, once warranted, effective in carrying out the basic aim of Title IV." 389 U.S. at 473, 88 S.Ct. at 649.

The Secretary's intervention is invoked by the filing of a timely complaint after internal remedies have been exhausted. The congressional commitment to voluntary redress has then been met. The Secretary's right to the statutory remedy of a supervised election cannot be defeated by any subsequent independent action of the union, whether it occurs before the Secretary files an action or after. *See also* Hodgson v. Local 1299, Steelworkers, *supra*, 453 F.2d at 576–577; Goldberg v. Amalgamated Local 355, 202 F.Supp. 844, 846 (E.D.N.Y. 1962).

Like any other potential litigant, the Secretary may attempt to settle the matter by agreeing not to file suit in exchange for compliance with prescribed conditions. But if no agreement is reached, or the conditions agreed upon are not met, the Secretary is free to proceed.[6]

Reversed and remanded for further proceedings.

Waivers of the LMRDA § 402(b) 60-Day Time Limit, 1971 Duke L.J. 1199; Note, Union Elections and the LMRDA: Thirteen Years of Use and Abuse, 81 Yale L.J. 409, 493 (1972). The usual requirement made of the union is submission to a supervised election. However, the Secretary does allow unsupervised second elections in certain situations. Union Elections, *supra*, at 494; Note, The Election Labyrinth, *supra* note 4, 43 N.Y.U.L.Rev. at 370–71.

6. The conditions imposed by the Secretary in this instance (first, that the rerun election be conducted in full compliance with § 401; and, second, that the rerun election be completed in sufficient time to permit the Secretary to determine, before the time for filing an action expired, whether the first condition has been met) were entirely reasonable.