HODGSON, SECRETARY OF LABOR *v.* LOCAL
UNION 6799, UNITED STEELWORKERS
OF AMERICA, AFL-CIO, ET AL.

No. 655.  Argued March 23, 1971—Decided June 14, 1971

MARSHALL, J., wrote the opinion of the Court, in which BURGER, C. J., and BLACK, DOUGLAS, HARLAN, STEWART, and BLACKMUN, JJ., joined.  BRENNAN, J., *post,* p. 341, and WHITE, J., *post,* p. 343, filed dissenting opinions.

*Deputy Solicitor General Wallace* argued the cause for petitioner.  With him on the brief were *Solicitor General Griswold, Assistant Attorney General Gray, Richard B. Stone, Peter G. Nash, George T. Avery, Beate Bloch,* and *Cornelius S. Donoghue, Jr.*

*Michael H. Gottesman* argued the cause for respondents.  With him on the brief were *Bernard Kleiman, George H. Cohen, Carl Frankel,* and *Jerome Smith.*

Opinion of the Court by MR. JUSTICE MARSHALL, announced by MR. JUSTICE STEWART.

Petitioner, the Secretary of Labor, instituted this action under § 402 (b) of the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 534, 29 U. S. C. § 482 (b), against Local 6799, United Steelworkers of America, to set aside a general election of officers conducted by the union.[1] The lawsuit arose after Nicholas Hantzis, an unsuccessful candidate for president of the local, protested the election to both the local and international union organizations. His protest concerned several matters including the use of union facilities to prepare campaign materials for the incumbent president who was re-elected.[2]

After failing to obtain relief through the internal procedures of either union organization, Hantzis filed a complaint with the Secretary of Labor pursuant to § 402 (a) of the Act, 29 U. S. C. § 482 (a). The complaint repeated the charge that union facilities had been used to promote the candidacy of the incumbent president and raised, for the first time, an additional objection concerning a meeting-attendance requirement imposed as a condition of candidacy for union office.[3] At no time during his

---

[1] The United Steelworkers of America, an international union under which Local 6799 is chartered, intervened as a party defendant.

[2] Hantzis' written protest consisted of a letter to the International Union which purported to describe the election's operation. Since the letter did not make specific allegations, it is difficult precisely to define Hantzis' objections. However, in addition to his general charge that union machinery had been used to aid incumbents, Hantzis also protested several procedural matters including the methods used to nominate and swear in officers. The Secretary of Labor subsequently concluded that none of these procedural matters constituted a violation of the Act.

[3] The attendance rule, which is contained in the constitution of the International Union, provides that a union member, in order to be eligible for election as a local union officer or grievance committee-

internal union protests did Hantzis challenge the attendance requirement.

Following an investigation of the complaint, the Secretary concluded that union facilities had been used improperly to aid the re-election of the incumbent president in violation of § 401 (g) of the Act, 29 U. S. C. § 481 (g). The Secretary also concluded that § 401 (e) had been violated because the meeting-attendance requirement had not been uniformly administered and because the requirement itself was not a reasonable qualification on the right of union members to hold office. Respondents were advised of these conclusions and were asked to take voluntary remedial action. When they failed to comply with the request, the Secretary brought this proceeding in the District Court for the Central District of California.

The District Court held that § 401 (g) had been violated by the use of union facilities for the benefit of the incumbent president's campaign and ordered a new election for the office of president.[4] The District Court also held, however, that the meeting-attendance rule was reasonable and that Local 6799 had not violated § 401 (e) by imposing the rule as a qualification on candidacies for union office.

On appeal, the Court of Appeals for the Ninth Circuit affirmed without reaching the question whether the attendance requirement was reasonable. In the court's view, Hantzis' failure to challenge the requirement during his pursuit of internal union remedies precluded the Secretary from later raising the issue. The court

---

man, must have attended at least one-half of the regular meetings of his local union for 36 months previous to the election unless union activities or working hours prevented his attendance. It is unclear from Hantzis' complaint whether he objected to the attendance rule itself or to the way in which the rule was administered during the election. Hantzis himself qualified under the rule.

[4] This facet of the District Court's decision is not challenged here.

reasoned that since the Act requires that union members protesting the conduct of elections exhaust their internal union remedies before complaining to the Secretary, Congress intended to empower the Secretary to assert only "those violations that are fairly apparent from a member's protest to the union . . . ." 426 F. 2d 969, 971.

Because the case presents an important issue concerning the scope of the Secretary's authority under the Act, we granted certiorari, 400 U. S. 940. We conclude that Hantzis' failure to object to the attendance rule during pursuit of his internal union remedies bars the Secretary from later challenging the rule in a § 402 (b) action. We therefore affirm the decision of the Court of Appeals.

Section 402 (b) provides that once a member challenging an election has exhausted his internal union remedies and filed a complaint with the Secretary of Labor, the Secretary "shall investigate such complaint and, if he finds probable cause to believe that a violation of this title has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization . . . ." [5] At

---

[5] "Sec. 402. (a) A member of a labor organization—

"(1) who has exhausted the remedies avaliable under the constitution and bylaws of such organization and of any parent body, or

"(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

"may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 401 (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

"(b) The Secretary shall investigate such complaint and, if he

the outset, petitioner contends that the language of the section empowers the Secretary to investigate and litigate any and all violations that may have affected the outcome of an election once a union member has exhausted his internal union remedies concerning any violation that occurred during that election. Emphasis is placed on the fact that the Secretary is authorized to act if his investigation uncovers "a violation"—this, it is

---

finds probable cause to believe that a violation of this title has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance wtih the provisions of this title and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization.

"(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

"(1) that an election has not been held within the time prescribed by section 401, or

"(2) that the violation of section 401 may have affected the outcome of an election,

"the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization. If the proceeding is for the removal of officers pursuant to subsection (h) of section 401, the Secretary shall certify the results of the vote and the court shall enter a decree declaring whether such persons have been removed as officers of the labor organization.

"(d) An order directing an election, dismissing a complaint, or designating elected officers of a labor organization shall be appealable in the same manner as the final judgment in a civil action, but an order directing an election shall not be stayed pending appeal."

said, means that the Secretary is not limited to seeking redress only in respect of the claims earlier presented by the union member to his union. However, the statutory language is not so devoid of ambiguity that it alone can bear the weight of the Secretary's expansive view of his authority. While the words "a violation" might mean "any violation whatever revealed by the investigation," the words are susceptible of other readings. In particular, they can fairly be read to mean, "any of the violations raised by the union member during his internal union election protest." In *Wirtz* v. *Laborers' Union,* 389 U. S. 477 (1968), this Court noted that the range of the Secretary's authority under § 402 (b) must be determined "by inference since there is lacking an explicit provision regarding the permissible scope of the Secretary's complaint," 389 U. S., at 481. We must, therefore, examine the legislative history and statutory policies behind § 402 and the rest of the Act to decide the issue presented by this case.

Examination of the relevant legislative materials reveals a clear congressional concern for the need to remedy abuses in union elections without departing needlessly from the longstanding congressional policy against unnecessary governmental interference with internal union affairs, *Wirtz* v. *Glass Bottle Blowers Assn.,* 389 U. S. 463, 470–471 (1968). The introduction to the Senate report accompanying the Act summarizes the general objectives of Congress:

> "A strong independent labor movement is a vital part of American institutions. The shocking abuses revealed by recent investigations have been confined to a few unions. The overwhelming majority are honestly and democratically run. In providing remedies for existing evils the Senate should be careful neither to undermine self-government within the labor movement nor to weaken unions in their role

as the bargaining representatives of employees." S. Rep. No. 187, 86th Cong., 1st Sess., 5 (1959).

The requirement of § 402 (a), that a union member first seek redress of alleged election violations within the union before enlisting the aid of the Secretary, was similarly designed to harmonize the need to eliminate election abuses with a desire to avoid unnecessary governmental intervention. The same Senate Report, in reference to Title IV of the Act and to the exhaustion requirement, states:

> "In filing a complaint the member must. show that he has pursued any remedies available to him within the union and any parent body in a timely manner. This rule preserves a maximum amount of independence and self-government by giving every international union the opportunity to correct improper local elections." *Id.*, at 21.

Plainly Congress intended to foster a situation in which the unions themselves could remedy as many election violations as possible without the Government's ever becoming involved. Achieving this objective would not only preserve and strengthen unions as self-regulating institutions, but also avoid unnecessary expenditure of the limited resources of the Secretary of Labor.

Petitioner contends that the congressional concerns underpinning the exhaustion requirement were in fact adequately served in this case, because the election in question was actually protested by a union member within the union, and because the union was later given a chance to remedy specific violations before being taken to court by the Secretary. In this view, it is irrelevant that Hantzis himself did not focus his election challenge on the attendance requirement when seeking internal union remedies. In sum, the Secretary urges that § 402 (b) empowers him to act so long as a union member ob-

jects in any way to an election and so long as the union is given the opportunity to remedy voluntarily any violations that the Secretary determines may have affected the outcome of that election, regardless whether the member objected to the violations during his protest to the union.

However, under petitioner's limited. view of congressional objectives, the exhaustion requirement of § 402 (a) is left with virtually no purpose or part to play in the statutory scheme. "Exhaustion" would be accomplished given any sort of protest within the union, no matter how remote the complaint made there from the alleged violation later litigated. The obvious purpose of an exhaustion requirement is not met when the union, during "exhaustion," is given no notice of the defects to be cured. Indeed, the primary objective of the exhaustion requirement is to preserve the vitality of internal union mechanisms for resolving election disputes—mechanisms to decide complaints brought by members of the union themselves. To accept petitioner's contention that a union member, who is aware of the facts underlying an alleged violation, need not first protest this violation to his union before complaining to the Secretary would be needlessly to weaken union self-government. Plainly petitioner's approach slights the interest in protecting union self-regulation and is out of harmony with the congressional purpose reflected in § 402 (a).

Of course, any interpretation of the exhaustion requirement must reflect the needs of rank and file union members—those people the requirement is designed ultimately to serve. We are not unmindful that union members may use broad or imprecise language in framing their internal union protests and that members will often lack the necessary information to be aware of the existence or scope of many election violations. Union democracy is far too important to permit these deficiencies to fore-

close relief from election violations; and in determining whether the exhaustion requirement of § 402 (a) has been satisfied, courts should impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question.[6] But when a union member is aware of the facts supporting an alleged election violation, the member must, in some discernible fashion, indicate to his union his dissatisfaction with those facts if he is to meet the exhaustion requirement.

In this case, it is clear that the protesting member knew of the existence of the meeting-attendance provision and that his election protests to the local and international unions concerned matters wholly unrelated to the rule. We therefore hold that internal union remedies were not properly exhausted and that the Secretary was barred from litigating the claim. Given this holding, we do not reach the question whether the meeting-attendance rule itself is reasonable.

The judgment is

*Affirmed.*

MR. JUSTICE BRENNAN, dissenting.

I dissent. The Court acknowledges that 29 U. S. C. § 482 (b), in permitting the Secretary to bring a civil action against the union if his investigation discloses "*a* violation" of § 481, might well mean "any violation whatever revealed by the investigation." *Ante,* at 338. Nonetheless, it concludes that "*a* violation" is limited to "any of the violations raised by the union member during his internal union election protest," *ibid.,* because the broader interpretation would disregard the congressional

---

[6] For much the same reasons, members should not be held to procedural niceties while seeking redress within their union, and exhaustion is not required when internal union remedies are unnecessarily complex or otherwise operate to confuse or inhibit union protestors.

purpose in imposing the exhaustion requirement. It is in giving controlling significance to the exhaustion requirement rather than to the clear and primary policy judgment enacted by Congress that the Court, in my view, falls into error.

*Wirtz* v. *Glass Bottle Blowers Assn.*, 389 U. S. 463 (1968), and *Wirtz* v. *Laborers' Union*, 389 U. S. 477 (1968), comprehensively analyzed the policy Congress meant to further in enacting the Secretary's enforcement powers under 29 U. S. C. § 482. We said that "Title IV's special function in furthering the overall goals of the LMRDA is to insure 'free and democratic' elections," 389 U. S., at 470, an interest "vital" not alone to union members but also to the general public. 389 U. S., at 475, 483. While we recognized that Congress desired to further this basic policy with minimal interference with a union's management of its own affairs, we made clear that where governmental intrusion was necessary to realize the vital public policy favoring free and democratic elections, "it would be anomalous to limit the reach of the Secretary's cause of action by the specifics of the union member's complaint." 389 U. S., at 483. We accordingly held that "it is incorrect to read [the exhaustion provision] . . . as somehow conditioning [the Secretary's] right to relief once that intervention has been properly invoked." 389 U. S., at 473.

That holding fits precisely the situation before us. Intervention was properly invoked when the dissident union member pursued his complaint through the union's internal procedures. When the Secretary's subsequent investigation uncovered another Title IV violation, surely it was "*a* violation" that Congress meant should also be corrected. Indeed, 29 U. S. C. § 482 (b) provides that if the Secretary's investigation leads him to conclude that there is "probable cause to believe that a violation of this subchapter has occurred" the Secretary should seek in a

civil action an order to set the election aside and "to direct the conduct of an election . . . *in accordance with the provisions of this subchapter.*" (Emphasis added.) The new election must, under § 482 (c), be conducted *"so far as lawful* and practicable, in conformity with the constitution and bylaws of the labor organization." (Emphasis added.) These provisions make inescapable the conclusion that Congress authorized the Secretary to ground an action for a new election not only on violations processed by the union member but also on other violations uncovered in his investigation. The Court's contrary construction ignores "the fact that Congress, although committed to minimal intervention, was obviously equally committed to making that intervention, once warranted, effective in carrying out the basic aim of Title IV." 389 U. S., at 473.

MR. JUSTICE WHITE, dissenting.

If, as in this case, a new election is ordered because a candidate used union facilities when he should not have, the Act directs a new election "under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization." 29 U. S. C. § 482 (c). I take it, then, that the Secretary is under no obligation, indeed forbidden, to follow a provision of the bylaws or constitution that is unlawful. If, in proceedings that order a new election, the Secretary discovers in the bylaws or constitution a provision regulating elections that he deems unlawful—such as the meeting-attendance rule—but the union insists that it is entirely lawful, does the Secretary simply ignore the provision in holding the election, may he or the union secure a judicial ruling on it, or is court action foreclosed and the Secretary required to follow the provision simply because a member in challenging

the election failed to attack the meeting-attendance rule, probably because it did not affect him?

I agree that if Hantzis' claim of using union facilities had been rejected, a new election could not have been ordered even though the Secretary turned up the meeting-attendance rule in his investigation and discovered that the ballot boxes had also been stuffed. But if the Secretary finds an invalid bylaw that purports to govern a new election that has been validly ordered on a claim that has been exhausted, as in this case, the Secretary appears to have express grounds in the Act, independent of the complaint-exhaustion requirements, to insist that the new election be conducted in accordance with the law and to insist that a court adjudicate the matter if the union stands by its bylaw provision.