James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

LOCAL 610, UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA (UE), Defendant.

Civ. A. No. 71–354.

United States District Court, W. D. Pennsylvania.

May 8, 1972.

Stephen K. Ernst, U. S. Dept. of Labor, Philadelphia, Pa., Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for plaintiff.

Daniel M. Berger, Berger & Kapetan, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

This is an action brought under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 481 et seq.) in which the plaintiff, Secretary of Labor James D. Hodgson, seeks to set aside the election of officers of the defendant, Local 610, United Electrical, Radio and Machine Workers of America of October 6 and 7, 1970. All of the relevant facts either have been stipulated to or were adduced at the non-jury trial held in this action.

Local 610 is the collective bargaining representative for two groups of employees of Westinghouse Air Brake Company ("WABCO"). One group is comprised of all the hourly paid production and maintenance employees at WABCO's Air Brake Division in Wil-

merding, Pennsylvania; the other of all the hourly paid production, maintenance, and technical employees and the salaried office employees at WABCO's Signal and Communications Division in Swissvale, Pennsylvania. On April 16, 1970, Local 610's constitution was duly amended to formalize its members' theretofore unwritten understanding that only the employees of the Air Brake Division were eligible to be president or financial secretary-treasurer of the local and only the employees of the Signal and Communications Division were eligible to be vice-president or recording secretary.[1] The underlying reason for the understanding, and the amendment, was that since significantly more of the local's members were, and are,[2] employed by the Air Brake Division, it was thought that elections without restrictions as to eligibility for office based on the division in which the candidate worked would produce officers exclusively from the Air Brake Division. To insure the representation of the local's members employed by the Signal and Communications Division, then, was the purpose of the understanding, and the amendment.

Subsequently, the election of October 6 and 7, 1970 was scheduled for all of the local's offices. Peter E. Calisti, an employee of the Air Brake Division and a member in good standing of the local, was properly nominated for the office of vice-president. Consonant with the amended constitution, however, his candidacy was not permitted. After the election, Mr. Calisti, by letter dated October 13, 1970 addressed to Thomas Quinn, the business agent of the local, formally protested,

". . . the election of officers held by Local 610, U.E., on October 6 and

October 7, 1970 . . . [for the reason that his] . . . name did not appear as a candidate for the office of vice-president of Local 610, although [he] was properly nominated . . ." Further, he requested that another election be conducted ". . . for the office of vice-president." At a meeting held between him and the officials of the local to consider the letter, Mr. Calisti indicated that because of the amendment to the constitution, he was protesting not only the election of vice-president, but the whole election. His request was denied.

Thereafter, following the unsuccessful exhaustion of the internal remedies available to him, he filed, on January 25, 1971, a timely complaint with the Department of Labor. Acting on Mr. Calisti's complaint, one Robert Brummell of the Department commenced an investigation of the protested election. On February 3, 1971, he visited the office of Local 610 and asked to examine certain records and documents relating to the election. The local contested the right of Mr. Brummell to see all of the records and documents which he requested, and gave him only (1) copies of the constitution and (2) the results of the election. Those records and documents which were refused Mr. Brummell were membership lists and records, mailing lists, the voters register, eligibility lists, financial records, ballots (actual and sample), work papers, tally sheets and other documents of the election committee.

Immediately following the visit, the local sought, in this court, to enjoin the investigation which the Department proposed to undertake. On February 24, 1971, the local's action was dismissed by

1. Article 5, Section 4 of Local 610's Constitution, as amended on April 16, 1970, reads as follows:
"Only members in good standing actively employed at the Air Brake Division [Wilmerding] may be eligible to be candidates for the offices of president or financial secretary-treasurer.
Only members in good standing actively employed at the Signal and Communica-

tions shop [Swissvale] may be eligible to be candidates for the offices of vice-president or recording secretary."

2. At the time of the election of October 6 and 7, 1970, of the local's 3,788 members, 2,347 were employed by Air Brake and 1,441 were employed by Signal and Communications.

the Honorable Gerald J. Weber. On March 5, 1971, the defendant finally agreed to submit the requested records and documents to the plaintiff for examination. An examination ensued, and thereafter, on April 14, 1971, the Department filed this action.

There exist in this action three issues of law: (1) whether or not the action was timely filed in this court, (2) whether or not the involved constitutional qualification is reasonable and (3) whether or not, if the election of October 6 and 7, 1970 is ordered to be rerun, it should be ordered rerun in its entirety or only as to the office of vice-president.

■ Section 402(b) of the Labor-Management Reporting and Disclosure Act provides that an action by the Department of Labor shall be brought within 60 days of the filing with it of a complaint. Calisti's complaint was filed on January 25, 1971; this action was not filed until April 14, 1971. The plaintiff does not contend that this action was filed within the 60 day calendar period. It contends that the tolling of the period should be suspended from February 3 to March 5—the time during which the defendant obstructed the Department's efforts to conduct an investigation by which to measure Calisti's complaint. The defendant contends that Hodgson v. Local Union 6799, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971) limits the investigations and litigation by the plaintiff of complaints to the specifics of the individual complaints. It contends therefore that since it permitted the government the only records and documents which it deemed at all relevant to the determination of whether or not the constitutional qualification was reasonable, its delay in giving the government all the other requested records and documents cannot be considered to have suspended the tolling of the 60 day period.

■ The difficulty with the defendant's position is twofold. First, Hodgson v. Local Union 6799 dealt solely with litigation. It in no way involved

the investigation of complaints or the limits of the investigation of complaints. Secondly, the defendant's view of the Department of Labor's scope of investigation is unnecessarily restrictive. Investigation is in the nature of discovery, and should be allowed to proceed with wide latitude. The Department should not be expected to make determinations of whether or not reasonable cause exists to believe that the laws which it enforces have been violated, in a vacuum. And, in any event, if the scope of investigation is to be circumscribed, it cannot be done on an individual and unilateral basis by the labor organization under the investigation. Here, with the possible exception of the financial records, all of the records and documents requested were relevant to the investigation of the protested election. More than the constitution and the results were needed, at least to put them in the proper perspective. Particularly important in interpreting them would be the setting, application and effect of the attacked provisions of the constitution. Such records and documents as membership and eligibility lists, the voters register, actual and sample ballots, and tally sheets, it would seem, would clearly be within the range of those records and documents relevant to putting the provision into perspective. I conclude that the defendant improperly delayed the investigation of Calisti's complaint by withholding records and documents pertinent to the Department's investigation, and therefore that the running of the 60 day period was suspended from February 3 to March 5, 1971. Thus this action was timely filed.

■ The next issue to be considered is that of whether or not the eligibility qualification embodied in Article 5, Section 4 of the constitution is reasonable. The end sought to be achieved by the provision, i.e., the insured representation, at least through elected officers, of a minority group within the membership of Local 610 is laudable. Of concern, however, is the means which was selected to effectuate that end. The defend-

ant argues that the means are reasonable. It argues that to insure the fair representation of its members who are employed by Signal and Communications the constitution must mandate the election of certain officers from their number. With this I agree. But the mandate of the constitution is unnecessarily overreaching. It specifies precisely to which offices those employed by Signal and Communications may be elected, and to which they may not be elected. Conversely, it unbendingly and unbendably, reserves the offices to which only those employed by Air Brake may be elected, and designates the offices from which they are precluded. With this I disagree.

The general requirement of § 401(e) of the Labor-Management Reporting and Disclosure Act is that,

". . . every member in good standing [of a labor organization] shall be eligible to be a candidate and to hold office . . . ."

This requirement is subject "to reasonable qualifications uniformly imposed". The government's position is that the qualification is not reasonable because it bars approximately 61% of the defendant's membership from being a candidate for or holding the office of vice-president or recording secretary, and approximately 38% from being a candidate for or holding the office of president or financial secretary-treasurer. The defendant does not strenuously contest the arbitrariness of the provision. Nor does the defendant contend that there is any functional relationship between the duties of the offices and the capabilities of the constituents of the groups of its members to which the offices are assigned. It argues rather that it is the only way to insure the fair representation of all of its members in its affairs, and that since the importances of the four offices are, in actuality, indistinguishable, it is a reasonable provision. Further, Local 610 portends that without the qualification those of its members who work at Air Brake would dominate its affairs, and to secure fair representation, those who work at Signal and Communications would be forced to form a separate labor organization. The defendant suggests that the bargaining position of both would be thereby weakened.

The difficulty with the amendment is its inflexibility. There is no apparent need to prescribe the precise offices for which those of each of the groups of the defendant's members are eligible. The end sought could be as easily and as effectively achieved by providing simply, for instance, that the president and vice-president may not be from the same group. While it is not the province of this court to rewrite the defendant's constitution, the availability of alternative means which are more flexible and more democratic, I think, makes the qualification unreasonable. Article 5, Section 4 of the defendant's constitution therefore must fall.

■ The final matter to be decided is that of whether or not, having determined that the constitutional qualification must fall, the entire election of October 6 and 7 must be rerun, or only that for the office of vice-president. Section 402(c) of the Labor-Management Reporting and Disclosure Act provides that if a violation of § 401 may have affected the outcome of an election, the election shall be declared void and it shall be ordered rerun under the supervision of the Secretary of Labor. Clearly the instant violation "may have affected the outcome" of the election of October 6 and 7; in fact it is not contended by the defendant that it did not. It is contended by the defendant, however, that since Calisti only complained to it of the fact that his name did not appear as a candidate for the office of vice-president, Hodgson v. Local Union 6799 limits the rerun election to that for the office of vice-president. As an abstract principle of law, that limitation is accepted. But Calisti's letter of protest expressly stated,

". . . that I hereby protest the election of officers held by Local 610, U.E., on October 6 and October 7, 1970."

Moreover, at his meeting with the officials of the local regarding the letter, Calisti was asked if he were protesting only the election of vice-president or the whole election, and he indicated that he was protesting the whole election. The defendant, then, was openly on notice of the full extent of Calisti's protest, *viz.*, to the whole of the amendment of April 16, 1970. Thus the principle of Hodgson v. Local Union 6799 is inapplicable, and the rerun election will not be limited to the office of vice-president, but will be conducted for all four offices of the defendant.

An appropriate order will be entered.