528

Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

WESTSIDE LOCAL 174, INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO, Defendant.

Civ. A. No. 82-70361.

United States District Court, E.D. Michigan, S.D.

Feb. 28, 1983.

Ross I. MacKenzie, Asst. U.S. Atty., Detroit, Mich., Janet Graney, U.S. Dept. of Labor Chicago, Ill., for plaintiff.

William A. Wertheimer, Asst. Gen. Counsel, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

FEIKENS, Chief Judge.

This case is before me on plaintiff's motion to compel answers to interrogatories. At issue is whether the Secretary of Labor can seek discovery about election improprieties at union polling places which were not specifically named in a generally pleaded election violation complaint, when the Sec-

retary has previously given defendant a smaller list of polling places he suspects were the sites of tainted voting. This issue appears to be one of first impression.

## I. INTRODUCTION

Plaintiff Raymond J. Donovan, Secretary of Labor (hereinafter "plaintiff" or the "Secretary") is suing a United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") amalgamated union local for union election irregularities in violation of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRD"), 29 U.S.C. § 401 *et seq.* The allegations include failure to use secret balloting, failure to insure a fair election, and the use of union funds for campaigning.

The challenged election was held during the week of June 1–5, 1981, at 78 different UAW polling places. Interrogatory 22 of Plaintiff's Second Set of Interrogatories asks for a description of the physical facilities for voting at each of the 78 locations where the election was held, and for information as to whether any union members voted on line, rather than at a designated spot.

## II. DEFENDANT'S POSITION

Defendant has supplied information in response to Interrogatory 22 for 23 of the 78 polling places, but refuses to furnish descriptions of the remaining 55 locations. Defendant maintains it can limit its response to 23 locations because they are the only locations plaintiff had probable cause to believe election violations had occurred at when he brought suit against the UAW local. In light of Section 482 of the LMRD, defendant says, plaintiff cannot seek information about other locations.

Section 482 provides that when the Secretary is presented with a complaint of election fraud,

(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this title has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action

against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election . . .

Defendant argues that this section means the Secretary's suit is limited to violations which, as a result of his precomplaint investigation, he had probable cause to believe had occurred.

As evidence of the plaintiff's failure to have probable cause to believe that election violations had occurred at locations other than the 23 defendant responded about, defendant cites an answer given by the Secretary to Defendant's First Set of Interrogatories. Interrogatory 23 asked the Secretary to list election locations where secret ballot violations occurred. The Secretary provided a non-exclusive list of the 23 sites not in dispute in this motion, explaining, "Inadequate secret ballot arrangements may have existed at other sites as well . . . Plaintiff is continuing to develop facts with respect to the allegation through the discovery process." Defendant suggests that seeking information with respect to any but the 23 listed locations is an effort by the Secretary to "continue [his] investigation in the guise of engaging in discovery." (Defendant's Memorandum of Law in Opposition to Motion to Compel, at 3). Furthermore, defendant says, the Secretary's search for more information belies the Secretary's response to a Motion for a More Definite Statement made by defendant prior to the instant motion, where the Secretary defended his generally pleaded complaint by saying that he would supply the underlying factual support during the discovery process. Finally, defendant says, the Secretary's request is overly broad and unduly burdensome.

## III. DISCUSSION

■ Were I to accept defendant's argument in this case, it would hamstring the Secretary in his ability to bring LMRD § 401 suits for election violations. Section 482(b) is, as defendant suggests, a device to

limit governmental intervention into the area of union democracy. It calls for the Secretary to make a probable cause determination of a violation within a short (60-day) period, so as to avoid initiating potentially time-consuming, expensive, and invasive litigation without sufficient justification. Similarly, § 482(a) of the Act, which calls for exhaustion of internal union remedies by union members before the Secretary may initiate a complaint, is designed to curb unnecessary interference with internal union affairs.[1] Nevertheless, these limitations must be read reasonably, and in keeping with the competing interests served by the Act: namely to insure the public, as well as union members, that union governance is legitimate. *Wirtz v. Local 153, Bottle Blowers Ass'n,* 389 U.S. 463, 470, 88 S.Ct. 643, 647, 19 L.Ed.2d 705 (1968).

This is not an instance of the Secretary having misled defendant as to the scope of his developing suit. Unlike *Marshall v. Ampthill Rayon Workers, Inc.,* 98 L.R.R.M. 2828 (E.D.Va.1978), *aff'd on rehearing,* 454 F.Supp. 84, the only case defendant cites to support foreclosing the Secretary from discovery, the Secretary has not up to this point disavowed an interest in complaining about the matter in question.

In *Ampthill,* the Secretary was prevented by the district court from amending his complaint to allege the union had improperly failed to place a candidate's name on the election ballot, because it was a type of LMRD violation he had not investigated prior to the bringing of suit. Furthermore, in "answers to interrogatories, the Secretary specifically excluded from the case any question as to whether the write-in candidate's name should have been placed on the ballot." *Id.*

■ *Ampthill* is clearly inapposite. First, the Secretary here was careful to advise defendant that the list of 23 sites where it had documented the secret ballot-

ing violation was not exclusive. Second, the Secretary is not trying to inject a new type of violation into this lawsuit. Rather, the Secretary is simply trying to discover additional instances of the same violation: failure to provide adequate polling places.

When one looks at the Secretary's complaint, and at the union members' complaint to the Union, it is clear that the Secretary has not attempted to shift or expand the grounds of his lawsuit by asking for information about all 78 polling places. Paragraph X of the Secretary's complaint alleged as follows:

> Defendant, in the conduct of the aforesaid election, violated:
>
> (a) Section 401(b) of the [LMRD] (29 U.S.C. § 481(b)) in that it failed to conduct the election by secret ballot *among the members in good standing . . .*" (emphasis added).

The Secretary's complaint is not limited to secret ballot violations affecting members voting only at certain spots.

In the internal protest by complaining union members (dated June 12, 1981), the following allegations were made under the heading "Did Not Provide Voting Booth to Provide Secrecy of Voting":

1. The Local Election Committee failed to provide a method of balloting that would insure secrecy. e.g. [sic] Firestone Unit voted on picnic tables directly in view of the Election Committee and other Unit Officers.

2. Towne Robinson Fastener voted on open stock tables with no partitions.

3. Motor Machine Castings, Vulcan Forge and Massey-Ferguson Office voted on open unpartitioned tables in clear view of Local and Unit Officers and International Officers.

These allegations were made along with this caveat:

---

1. Commenting upon the principles recognized in formulating the LMRD, the Senate Committee on Labor and Public Welfare mentioned ". . . the desirability of minimum interference by Government in the internal affairs of any private organization." S.Rep. No. 187, 86th Cong., 1st Sess. 7, *reprinted in* 1959 U.S.Code Congr. & Ad.News 2318, 2323. *See also, Hodgson v. Local Union 6799, United Steelworkers of America, AFL–CIO, et al.,* 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971).

These are but a few examples of where a method of assuring secrecy of ballots was not provided ... This was a practice throughout the Local Union. Further examples will be supplied upon request. Obviously, a pattern or practice of election improprieties (comprised in part of failure to insure ballot secrecy) is being alleged as the violation to be investigated and redressed.[2] The Secretary's Answer to Defendant's Interrogatory 22 does not indicate a curtailed scope of concern.

 I also cannot agree with defendant that the Secretary's answer to Interrogatory 22 indicates he had insufficient probable cause to bring this action with respect to any but 23 sites, and therefore cannot discover information relating to the additional 55. Defendant is misconstruing the type of probable cause necessary to support the filing of a complaint for election violations under the LMRD. In the sixty-day period before he brings suit, the Secretary must determine whether there is "probable cause to believe a violation has occurred." § 482(b). This is a weeding out process. At trial, the Secretary has to do substantially more to win the relief of a new election; he must demonstrate that the cumulative effect of the instances of the violation was outcome determinative. 29 U.S.C. § 482(c). To insist that the Secretary should have, at the end of the relatively short period allotted to him to investigate union member complaints, probed each instance of impropriety is to misconstrue the word "violation."[3] The violation is the failure to provide proper polling places; the violation is

alleged to have taken place during a specific election. Information about *where* each violation episode occurred is what the Secretary is requesting here; he is not trying to find evidence of different types of violations.

The probable cause requirement insists upon a certain degree of belief that a violation has occurred—it should also be read to require the Secretary to make a preliminary assessment whether the violation was more than de minimus.[4] The defendant is not, however, asserting that the Secretary had insufficient grounds to bring the complaint, and "the mere filing of a civil action raises the presumption that the Secretary has found probable cause ..." *Marshall v. Seafarers', Local 777,* 107 L.R.R.M. 2767 (N.D.Ill.1980). Given these circumstances, I will not prevent the Secretary from using discovery to try to prove that the violation was of sufficient magnitude to require a new election.

For the reasons stated herein, the Secretary's motion to compel the defendant to more fully answer Interrogatory 22 is granted.[5] IT IS SO ORDERED.

---

**2.** See *Marshall v. Longshoreman's Ass'n,* 97 L.R.R.M. 2501 (S.D.Tex.1978); *cf. Hodgson v. District 6, UMW,* 474 F.2d 940 (6th Cir.1973) (union member's complaint to be liberally construed).

**3.** In *Marshall v. Longshoreman's Ass'n, supra,* the court observed: "Where widespread irregularities sufficient to justify an inference of a pattern and practice of irregular conduct are shown and the government investigation and the union investigation did not cover each and every local within the District, it is reasonable to infer ... that other irregularities existed which were not revealed." *Id.* at 2503.

**4.** The Senate Report on the LMRD had this to say: "Since an election is not to be set aside for technical violations but only if there is reason to believe that the violation has probably affected the outcome of the election, the Secretary would not file a complaint unless there was also probable cause to believe that this condition was satisfied." 1959 U.S.Code Cong. & Ad.News, *op. cit.,* at 2377.

**5.** At the hearing on this motion, defendant was ordered by me to supply fuller answers to Interrogatories 29, 31, 32 and 33. Therefore, I have not discussed these interrogatories in this written opinion.