Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor

v.

PENNSYLVANIA OPTICAL WORKERS ASSOCIATION.

Civ. A. No. 84–5015.

United States District Court, E.D. Pennsylvania.

Feb. 1, 1985.

Edward T. Ellis, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Leon Ehrlich, Reading, Pa., for defendant.

## FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW, AND ORDER

HUYETT, District Judge.

Following a hearing on January 25, 1985, upon plaintiff's petition for an order compelling compliance with the supervisory instructions of the Secretary of Labor ("Secretary"), I make the following findings of fact and conclusions of law.

### Findings of Fact

1. Eric Feldman testified at the January 25, 1985 hearing. I found that his testimony was straightforward and candid and found him to be a credible witness.

2. Feldman is an investigator with the Office of Labor Management Standards, United States Department of Labor.

3. Feldman has been assigned to supervise an election of officers of the Pennsylvania Optical Workers Association ("POWA") directed by my order of December 18, 1984.

4. At the pre-election conference held on January 15, 1985, Feldman was informed that POWA had no intention of waiving several of its by-laws which limited eligibility to hold office within the Union.

5. Feldman stated that the POWA had about 150 members and that to his knowledge, meetings were held irregularly and not on a regular monthly basis.

6. Under the by-laws of the POWA, eligibility for office is limited to those who have belonged to the union for more than five years and who have attended two-thirds of the regular meetings of the union over the twelve months preceeding the election. Government Exhibit 1, Art. 4, Section 2.

7. David Breneiser testified at the January 25, 1985 hearing. Although he had occasional lapses, I found him to be a generally credible witness.

8. Breneiser testified that POWA held regular monthly meetings except in the months of June, July, and August and that the last two or three monthly meetings before contract negotiations begin are tentative.

9. Breneiser produced a list of all meetings that took place in the last year along with a list of all those who were eligible to hold office under the attendance rule. Union Exhibit 1.

10. Breneiser testified that this list had been prepared by the POWA's recording secretary who had polled all the current union officers. This list was prepared on either January 20, 1985 or January 21, 1985 at Breneiser's request.

11. The union maintains no regular records of meeting attendance, although prior to April, 1984, POWA used "sign-in" sheets to record attendance. All records from prior to April, 1984 were lost or stolen.

12. The list prepared by POWA contains the names of twenty-four members of the union including all eight present office holders. Thus, there are a total of sixteen members of POWA who are eligible to run for office and who are not incumbent office holders.

13. Breneiser testified that all twenty-four members on the list had attended every meeting throughout the preceeding year, although Union Exhibit 1 states that only eighteen members attended the February 5, 1984 meeting and only twenty attended the March 11, 1984 meeting.

14. Breineiser could not recall the dates of the September, 1984 or the November, 1984 meetings, but was sure they had occurred although a quorum was not present

at the September meeting and it was cancelled.

15. Brenheiser testified that the meeting attendance requirement existed in order to ensure that all members who sought office within the union were familiar with union affairs and suitable for office.

16. Regular notice is given for all meetings which includes posting of notices on plant bulletin boards.

17. All present members of the union have been members for five or more years.

### Discussion

This is an action under Title IV of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401 et seq., 481–483, brought by the Secretary on October 16, 1984. In his complaint the Secretary alleged that the defendant had failed to conduct elections in violation of section 481(b) of the LMRDA.

On December 18, 1984, I granted the Secretary's motion for summary judgment and ordered POWA to hold an election for officers within ninety days. I made this decision after the government had demonstrated to my satisfaction that the union was in violation of the LMRDA, 29 U.S.C. § 481(b), which requires that unions hold elections "not less often that once every three years." The order stated that the election was "to be conducted under the supervision of the Department of Labor ... and insofar as lawful and practicable in accordance with the by-laws and constitution of the Association." In connection with the implementation of this order, the Department of Labor arranged for one of its investigators to supervise the election.

On January 15, 1985, a pre-election conference was held with Eric Feldman, the Department of Labor's investigator, and members of the POWA. At that time Feldman was informed that the union had no intention of waiving the enforcement of certain of its by-laws which the Secretary considered invalid.[1] At issue at this stage is POWA's "meeting attendance" rule which requires that all potential candidates for office have attended two-thirds of the regular monthly meetings held in the twelve months preceeding the date of the election. *See* Union By-Laws, Government Exhibit 1, Art. 1, Section 2.

The Government contends that the enforcement of this rule violates the LMRDA in that it unreasonably restricts the member's eligibility to hold office. By the Union's own reckoning, only sixteen of its 150 members who are not present officeholders would be eligible to run for office.

POWA argues initially that this court lacks the jurisdiction to reach the merits of the arguments concerning the meeting attendance rule because the complainant, Kenneth Nein, did not raise that issue himself before the union. POWA relies on *Hodgson v. Local Union 6799*, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971). This reliance is misplaced. In *Hodgson*, the court held that the Secretary could not reach the validity of an eligibility rule in determining whether an election was valid because the complainant had not raised the validity of that particular rule before the union grievance machinery. Later cases reveal, however, that the *Hodgson* limitation on the power of the Secretary does not apply to situations in which there is a court ordered supervised election. In those situations, *Hodgson* is inapplicable. *Trbovich v. United Mine Workers*, 404 U.S. 528, 537 n. 8, 92 S.Ct. 630, 636 n. 8, 30 L.Ed.2d 686 (1972); *Donovan v. Illinois Education Ass'n.*, 667 F.2d 638, 640 (7th Cir.1982). Indeed, the LMRDA requires that the Secretary, upon finding a violation, hold a supervised election in ac-

---

1. The Secretary initially sought to have three of POWA's by-laws declared invalid. One of these was waived through mutual consent. POWA also requires all candidates for office to have belonged to the union for five years. It became apparent at the hearing on January 25, 1985 that all of the present members of the union had belonged to the union for at least five years. The Secretary then stated that he would not contest the validity of the five year rule because its operation would not result in the disqualification of any member.

cord with the provisions of the LMRDA. 29 U.S.C. § 482(b).

POWA also argues that the meeting attendance rule does not violate the Act. I need not reach the question whether the rule violates the Act on its face, however, because its application in this case is clearly violative of the LMRDA.

■ POWA apparently seeks to apply an eligibility rule that would effectively close out more than 80% of the otherwise eligible non-officeholders. Moreover, the Union possesses no records of the attendance at its meetings. I find it incredible that POWA seriously contends that it should be allowed to enforce this by-law when it will have to rely on the collective recollection of the current officeholders in order to "reconstruct" the attendance records. One of those charged with this reconstruction, David Breneiser, could not recall the date of a meeting which occurred in November, 1984, barely two months ago, yet he claimed to be able to recall all twenty-four members who attended meetings that took place over one year ago. Breneiser also stated that he was not aware of any mechanism for handling challenges to the prepared list and that he was unsure whether meetings called but cancelled because of a lack of a quorum would be counted toward the eligibility requirement. There are no provisions in the by-laws governing these situations nor is there any provision governing how to calculate the number of meetings one need attend if two-thirds of a year's meetings do not equal an even number (as is the case here).[2]

■ In *Local 3489, United Steelworkers of America v. Usery*, 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977), the Court stated: "[w]hether a particular quali-

fication is reasonable within the meaning of the [the Act] must therefore be measured in terms of its consistency with the Act's commands to unions to conduct 'free and democratic' union elections." (quoting from *Wirtz v. Hotel Employees*, 391 U.S. 492, 499, 88 S.Ct. 1743, 1748, 20 L.Ed.2d 763 (1968)). The justification proffered by POWA for the eligibility rule falls far short of the justification needed to restrict the exercise of the members' democratic rights as much as the present rule does. POWA merely asserts that the rule is necessary in order to ensure that all candidates for office are familiar with union affairs and its situation. Congress, in enacting the LMRDA has shown a preference that union elections be, as far as is practicable, based on the same foundations as those elections which take place throughout society. The best means for ensuring that only those qualified to hold office are elected is not to place some arbitrary eligibility requirement[3] on the members which operates to exclude 80% of them from running for office, but rather to provide for the freest elections possible so that the members themselves through the exercise of their rights can decide who is the most qualified.

### Conclusions of Law

1. This court has jurisdiction over this case pursuant to 29 U.S.C. § 482(b).

■ 2. The Secretary of Labor in the course of supervising an election, ordered by the court under 29 U.S.C. § 482(c), has the authority to declare void for the purposes of the supervised election, any Union by-law that conflicts with the provisions of Title IV of the LMRDA. 29 U.S.C. § 482(c); *Donovan v. Illinois Education Association*, 667 F.2d 638, 640 (7th Cir.

---

**2.** I have examined the by-laws of the Union and have not found any provisions therein for the handling of any election procedures or problems.

**3.** Because the Union does not hold regular meetings in June, July, or August, a candidate who wanted to run for office in the present supervised election would have had to decide to attend meetings beginning in March of 1984. This, however, is a supervised election sched-

uled pursuant to my December 18, 1984 order. Therefore, members of the union have no more than 90 days notice of the election. Because a member has to attend at least five (and possibly six) meetings in order to be eligible, no member would have enough notice of this election to be able to attend sufficient meetings to qualify unless she or he had already attended at least two of the preceding seven meetings.

1982); *Millwrights Local Union 1914 v. Carroll*, 654 F.2d 548 (9th Cir.1981); *see also Trbovich v. United Mine Workers*, 404 U.S. 528, 537, 92 S.Ct. 630, 635, 30 L.Ed.2d 686 (1972).

3. The meeting attendance rule in this case is void and invalid as applied by the POWA. Such a by-law, assuming that it may be enforceable in some contexts, clearly cannot be enforced here where the Union has failed to keep adequate records of the attendance at its meetings and has decided to rely on the collective recollection of the present office holders in order to reconstruct the attendance. The method used by the union is inherently suspect and untrustworthy. It contravenes the purposes of Title IV of the LMRDA to allow the incumbent leadership of a union to determine the eligibility of the membership to hold office in a way which is so obviously open to manipulation.

4. The Union shall comply with the December 18, 1984 order of this court, the election shall proceed as ordered.