**Louis IZYKOWSKI, Forrest Darby, and Rhys Jones, Plaintiffs,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Defendant.**

Civ. A. No. 90–2139.

United States District Court, District of Columbia.

July 31, 1991.

Paul R.Q. Wolfson, Paul Alan Levy and Alan B. Morrison of Public Citizens Litigation Center, Washington, D.C., for plaintiffs.

Laurence J. Cohen, Richard M. Resnick and Michael J. Hayes of Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, D.C., for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the Court on defendant's Motion for Summary Judg-

ment and plaintiffs' Cross–Motion for Summary Judgment. For the following reasons, plaintiffs' motion will be denied and defendant's motion will be granted.

## I.

Plaintiffs are two current members [1] and one retired member [2] of the International Brotherhood of Electrical Workers ("IBEW"). Plaintiffs claim that an article in the union constitution, and regulations adopted pursuant to that article, violate Section 101(a)(2) of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a)(2).

The Article in the IBEW Constitution challenged by plaintiffs states

No candidate (including a prospective candidate) for Local Union office and no supporter of a candidate for Local Union office may solicit or accept financial support or any other direct or indirect support of any kind (except an individual's own volunteered personal time) from any non-member of the Local Union or any foundation corporation or other entity whose funds are derived in whole or in part from any person not a member of the Local Union. This rule does not apply to the financing of litigation concerning the legal rights of candidates or other members in connection with elections for Local Union office.

The I.E.C. shall adopt regulations as necessary to implement this provision and Article III, Section 12. The regulations shall provide for the maintenance of such records and the filing of such reports, by candidates and their supporters, as may be necessary for the administration and enforcement of this section.

IBEW Constitution, Article XVIII, Section 21.

1. Louis Izykowski is from IBEW Local 11 in Los Angeles, California, and Forrest Darby is from IBEW Local 357 in Las Vegas, Nevada.

2. Rhys Jones is a retired member of IBEW Local 11.

3. These temporary workers are called travelers. A traveler is a member of one local union in the international union who is working in another

The definition of "non-member of a Local Union" in the regulations includes retired members of the local union holding the election, and members of other locals in the same international union, including members who are temporarily working in the local holding the election.[3] All candidates for office who expend more than $100 are required to file a campaign contribution disclosure report with the IBEW International Secretary. The disclosure reports contain the names of all of those who have contributed $10 or more to a candidate for local union office. The reports are available upon request to all other announced candidates for the same office. The regulations also provide for an independent Campaign Contribution Administrator to administer and enforce Article XVIII, Section 21.

Plaintiffs contend that these union rules violate their rights of free speech and association protected by Section 101(a)(2) of the LMRDA. Section 101(a)(2) provides that

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of the meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere

local union. The traveler is allowed to vote, contribute, etc., in his home local. A traveler may also transfer to the local union in which he is working. A perfect example is plaintiff Darby who was a member of IBEW Local 1547 in Anchorage, Alaska, worked as a traveler in IBEW Local 357 in Las Vegas, Nevada, from 1985 to 1990, and became a permanent member of IBEW Local 357 in late 1990.

with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2).

Specifically, the plaintiffs object: 1) to "non-member contribution restrictions;" 2) to "mandatory disclosure requirements;" and 3) to the processing of charges against Izykowski for failing to file required campaign contribution reports.

## II.

Defendant argues that the constitutional provision and implementing regulations are "reasonable rules" permitted by the LMRDA § 101(a)(2). Defendant relies on *United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982), to support its position. In *Sadlowski,* the Supreme Court upheld union regulations that were nearly identical to those at issue here. *Sadlowski* permitted the union's prohibition of election contributions from non-members of the national union, including retired members of the national union.

Plaintiffs argue that *Sadlowski* is distinguishable because local elections for local unions are different than national elections for national unions. Plaintiffs understand that non-members of an international union are true outsiders when it comes to union elections. However, they insist that members of different local unions in the same international union are not outsiders for purposes of local union elections. Plaintiffs point to the role elected local union officials play in formulating policy for the international union to show that members of the international union are insiders for purposes of local union elections. Plaintiffs are particularly concerned with the fate of retired members of local unions and travelers. These two groups are not allowed to contribute to the local union election that could have the largest impact on their future position in the union.

 This Court begins its analysis by turning to *Sadlowski.* "To determine whether a union rule is valid under the statute, we first consider whether the rule interferes with an interest protected by the first part of § 101(a)(2). If it does, we then determine whether the rule is 'reasonable' and thus sheltered by the proviso of 101(a)(2)." *Sadlowski,* 457 U.S. at 111, 102 S.Ct. at 2345. In conducting its inquiry, this Court is mindful that "First Amendment principles may be helpful, although they are not controlling." *Id.* at 111, 102 S.Ct. at 2345. This is because "First Amendment freedoms may not be infringed absent a compelling governmental interest. Even then, any government regulation must be carefully tailored, so that rights are not needlessly impaired. Union rules, by contrast are valid under § 101(a)(2) so long as they are reasonable; they need not pass the stringent tests applied in the first amendment context." *Id.* at 111, 102 S.Ct. at 2345 (citations omitted).

The constitutional provision and the regulations at bar do touch on First Amendment concerns. "Restrictions that limit access to funds may reduce the number of issues discussed, the attention that is devoted to each issue, and the size of the audience reached." *Id.* at 113, 102 S.Ct. at 2346 (citations omitted). Therefore, "[t]he critical question is whether a rule that partially interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution." *Id.* at 112, 102 S.Ct. at 2346.

The Supreme Court in *Sadlowski* upheld the ban on outside contributions because the purpose of the ban was "to ensure that non-members do not unduly influence union affairs ... [and] to ensure that the union leadership remained responsive to the membership." *Id.* at 115, 102 S.Ct. at 2347 (citations omitted). The Supreme Court expressly held that "[a]n examination of the policies underlying the LMRDA reveals that this is a legitimate purpose that Congress meant to protect." *Id.* at 116, 102 S.Ct. at 2348.

The defendant in this case claims to have adopted its rules for the same reasons as the Steelworkers. Defendant argues that local unions, like national unions, have unique interests that need protection. Defendant further insists that these local interests are open to undue influence by out-

siders, including members of other locals in the same international union.

Local unions clearly have unique, local interests, which differ from local to local in the same international. Both sides agree that within the IBEW there are construction locals, mixed locals,[4] and non-construction locals. The IBEW has locals in geographically diverse parts of the country and its local members work in diverse industries under diverse economic conditions. Plaintiffs themselves admit that local unions have diverse opinions on many issues, such as binding arbitration. Plaintiffs Motion for Summary Judgment at 32.

Plaintiffs argue that outside contributions from members of other locals in the IBEW encourage "grassroots political change, the process by which new policies spread from jurisdiction to jurisdiction, gaining support at local levels." Plaintiffs Motion for Summary Judgment at 32. They insist that members of the same international union, although members of different locals, should be allowed to influence each other.

■ The question for the Court is whether it is reasonable for local unions with local interests to limit the possibility of undue influence over their elections and their leadership. This Court believes that it is reasonable. Just as the international union in *Sadlowski* could protect itself from undue influence from outside the international, *id.* at 121, 102 S.Ct. at 2350, so to can local unions protect themselves from undue influence from outside the local. While communication between local unions is positive, and not prohibited by the rules in question, contributions from outside the local aimed at influencing a local election and swaying its leaders may legitimately be banned, even if the contributions come from members of other locals in the same international.

The Court, therefore, holds that the regulations barring non-members from contributing is reasonable, and therefore valid under § 101(a)(2). The Court makes no distinction between members of different

local unions, travelers, and retired members of the local union. All are outsiders to the local union and are prone to have interests separate from the members of the local union holding the election.

Travelers are just as likely to have interests that differ from members of the local union holding an election as are other non-members that are members of different locals in the international union. Indeed, there is more of a chance that travelers, as opposed to non-members of the local that are members of the international union and working in their own home local, will have interests contrary to local union interests at election time. This is because travelers are generally concerned with short term economic issues while the permanent members of the local holding the election are more likely to be concerned with long term interests.

Similarly, retired members have different interests than working members. *Allied Chemical and Alkali Workers of America, Local 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 172–175, 92 S.Ct. 383, 394–96, 30 L.Ed.2d 341 (1971). The primary issue for retirees is their retirement benefits. *Id.* at 173, 92 S.Ct. at 394. This is not necessarily the most important issue for working members. The retired members are in no different, or better, position than any other group that would seek to influence local union elections through contributions. Moreover, and most importantly, the Supreme Court noted in *Sadlowski* that one of the plaintiffs was a retired member of the Steelworkers and still held that he was an outsider. *Sadlowski,* 457 U.S. at 106 n. 3., 125, 102 S.Ct. at 2343 n. 3, 2352.

### III.

Plaintiffs also challenge the mandatory campaign contribution disclosure requirements promulgated by the union. As stated above, the union requires that any candidate for local election that spends more than $100 on a campaign must disclose the source of his funds. The union contends

---

**4.** Mixed locals contain both construction workers and non-construction workers.

that the requirement is necessary to prevent fraud and to make sure that only local members are contributing. The list of campaign contributions is filed with the International Secretary and that list is available to opposing candidates upon request.[5]

Plaintiffs argue that the disclosure rules are unreasonable because the union leadership can identify, and discriminate against, the supporters of those running for office.

Defendant argues that the Steelworkers had similar disclosure requirements in *Sadlowski* and note that the district court responsible for supervising the 1991 Teamsters' election has upheld similar disclosure requirements. *United States v. International Bhd. of Teamsters*, 742 F.Supp. 94, 105 (S.D.N.Y.1990) ("In order to ... ensure honest, fair, and free elections, such disclosure is essential"). Furthermore, the union points out that campaign disclosure is legal under the First Amendment in the federal election context, *see Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), and therefore it must be legal under the lower standard imposed by the LMRDA.

Plaintiffs reply that the IBEW is different from the Teamsters and the Steelworkers because the IBEW is a construction union that assigns job through local hiring halls.[6] The hiring halls are controlled by the local union officials. Because the hiring is controlled by the local officials, plaintiffs contend that there is a possibility of

discrimination against local members who support union dissidents.[7] The plaintiffs also note that minor political parties do not have to disclose their financial supporters in federal elections if there is a "reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals." *Buckley*, 424 U.S. 1, 74, 96 S.Ct. 612, 661; *see also Brown v. Socialist Workers '74 Campaign (Ohio)*, 459 U.S. 87, 103 S.Ct. 416, 74 L.Ed.2d 250 (1982).

The IBEW answers that the challengers in contested local union elections are not the equivalent of minor political parties that have no chance of winning local elections.[8] The union disputes that hiring hall discrimination occurs against backers of challengers in local elections.[9] Additionally, the union points out that there are a number of procedures in place to protest hiring hall discrimination, if, in fact, there is a problem in the hiring halls.

To resolve this second issue, the Court must again look to *Sadlowski* for guidance. The standard for resolving this question is the same as above: 1) does the rule interfere with a protected interest under § 101(a)(2); and 2) if so, is the rule "reasonable" under § 101(a)(2). 457 U.S. at 111, 102 S.Ct. at 2345.

■ It is questionable whether mandatory campaign contribution disclosure at the local union level has any negative impact

---

5. Plaintiff Izykowski requested, and received, his opponents mandatory campaign contribution reports regarding the same election in which he failed to file any reports.

6. It must be noted that some Steelworkers also work in the construction field and are hired through hiring halls. Additionally, only about a third of the IBEW members work in construction.

7. Plaintiffs do not offer an iota of evidence that any such discrimination has occurred. Plaintiffs *do point to the fact that* discrimination has occurred in IBEW hiring halls in the past. However, they make no showing that: 1) hiring hall discrimination continues; or 2) any past or present discrimination is causally related to contribution disclosure. In fact, plaintiffs do not even allege that any discrimination has occurred due to previous campaign contribution

disclosure. They simply proffer that it might occur. That is not enough. *Buckley*, 424 U.S. at 74, 96 S.Ct. at 661.

8. It is undisputed that union challengers to incumbent elected local officials have been able to raise significant funds, mount effective campaigns, and defeat incumbents in local elections throughout the international union.

9. The plaintiffs are unable to point to any evidence of discrimination against challengers, as noted above in footnote 7, therefore this court cannot find that there is a reasonable probability of threats, harassment or reprisal. *See Buckley*, 424 U.S. at 74, 96 S.Ct. at 661; *see also Brown v. Socialist Workers '74 Campaign (Ohio)*, 459 U.S. 87, 101 n. 20, 103 S.Ct. 416, 424 n. 20.

on plaintiffs rights of free speech and association. However, there is no need to answer that question because disclosure of campaign contributors is clearly permitted as a "reasonable rule" under *Sadlowski*. 457 U.S. 102, 118, 130–131, 102 S.Ct. 2339, 2349, 2355;[10] *see also International Bhd. of Teamsters*, 742 F.Supp. at 105. The five members of the majority in *Sadlowski* agreed that disclosure rules were permitted under § 101(a)(2). However, they thought that disclosure rules alone would not solve the problem of outside influence in union elections. *Sadlowski*, 457 U.S. at 118, 102 S.Ct. at 2349. "A disclosure requirement ensures only that union members know [that candidates who received funds from outside the union might still be beholden to outsiders]. It does nothing to eradicate the threat of outside influence." *Id.* The four dissenters also agreed that a disclosure rule was permitted under § 101(a)(2). Justice White, writing for Justices Burger, Brennan and Blackmun stated

> A requirement of disclosure of all contributions, together with a ceiling on contributions, would avoid outside corruption without trampling on the rights of members to raise reasonable sums for their election campaigns. Such rules would honor both purposes of the legislation: protecting against outside influence and empowering members to express their views and to challenge established leadership.

*Id.* at 130–131, 102 S.Ct. at 2355. The only dispute between the nine Justices regarding disclosure requirements was whether disclosure requirements *by themselves* were enough to protect the union against outside influence. This Court, therefore, holds that the IBEW campaign disclosure requirements are permitted under § 101(a)(2).

## IV.

As the campaign contribution disclosure requirements are permitted by § 101(a)(2), and plaintiff Izykowski was disciplined by the independent Campaign Administrator for failing to file required campaign contributions reports, the Court sees no reason to interfere with Izykowski's punishment.[11]

## V.

In sum, the Court holds that the IBEW Constitution, Article XVIII, Section 21, and the regulations promulgated thereunder banning non-member contributions in local union elections and requiring candidates for local union office to file campaign contribution disclosure reports are permitted under the LMRDA § 101(a)(2). Though the union rules may partially restrict union members rights under § 101(a)(2), they are sheltered by the "reasonable rule" proviso in the same statute. The discipline of Izykowski by the independent Campaign Administrator for violating these permitted union rules is therefor proper.

---

**10.** Plaintiffs suggest in their motion for summary judgment that filing the names of campaign contributors with the impartial Election Administrator rather than the partial Secretary of the International would solve the twin problems of chilling free speech and discrimination in the hiring hall. *See* Plaintiffs' Motion For Summary Judgment at 38. Although this suggested rule would, no doubt, also be reasonable, it is not the Court's function to interfere unduly in unions' internal affairs. *See Hodgson v. Unit-*

*ed Steelworkers of America, Local Union 6799*, 403 U.S. 333, 338, 91 S.Ct. 1841, 1845, 29 L.Ed.2d 510 (1971).

**11.** Izykowski's punishment is that he cannot run in another local union election until he files the appropriate campaign contribution disclosure forms. No other sanctions have been visited upon Izykowski for failing to file the mandatory disclosure forms.