William E. BROCK, Secretary of Labor, (formerly) Raymond J. Donovan, Secretary of Labor, United States Department of Labor, Plaintiffs,

v.

LOCAL 553, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL–CIO, Defendants.

Civ. No. 84–3197.

United States District Court,
S.D. Illinois,
E. St. Louis Division.

June 28, 1985.

On Motion to Dismiss
Feb. 5, 1986.

Ralph M. Friedrich, Asst. U.S. Atty., E. St. Louis, Ill., Francis X. Lilly, Solicitor of Labor, Leonard A. Grossman, Atty. U.S. Dept. of Labor of Counsel, Chicago, Ill., Linda L. Moy, Washington, D.C., for plaintiffs.

Barry J. Levine, Gruenberg, Souders & Levine, St. Louis, Mo., Robert Larson, Smith, Larson & Pitts, East Alton, Ill., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Plaintiff brought this action under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 *et seq.* seeking to hold the defendant's election of December 1, 1983 null and void. This cause was tried before the Court, without a jury, on April 23–24, 1985. Having heard the evidence and arguments of both parties, the Court makes the following findings of fact and conclusions of law, as required by Fed.R.Civ.P. 52(a).

## FINDINGS OF FACT

1. Plaintiff brought this action under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (Act), 29 U.S.C. § 401 *et seq.*

2. Defendant is, and at all times relevant to this action has been, a local labor organization engaged in an industry affecting commerce within the meaning of 29 U.S.C. §§ 402(i), (j), and 481(b).

3. Defendant is, and at all times relevant to this action has been, chartered by and subordinate to the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO, (Union), an international labor organization engaged in an industry affecting commerce within the meaning of 29 U.S.C. §§ 402(i) and 402(j).

4. Defendant is, and at all times relevant to this action has been, an unincorporated association maintaining its principal office at 995 East Airline Drive, City of East Alton, County of Madison, State of Illinois, within the Southern District of Illinois.

5. Defendant, conducted an election of officers on December 1, 1983, which election was subject to the provisions of Title IV of the Act (29 U.S.C. § 481 *et seq*).

6. Lawrence P. Mefford, a member in good standing and then incumbent president of defendant, filed a protest concerning this election by letter dated December 7, 1983, addressed to the General Secretary-Treasurer of the Union. (Plaintiff's Exhibit No. 12). Mefford was not running in the election. Among other things, Mefford protested that mailing lists were not made available to all candidates and that a certain candidate was allowed to use the defendant's postage meter while others were not.

7. By letter dated December 20, 1983, International Representative Oliver H. Dunn denied Mefford's protest. By letter dated December 23, 1983, Mr. Mefford appealed the denial of his protest to the General President of the Union. By telegram dated January 5, 1984, the General President denied the appeal. Mefford filed a complaint with the Secretary of Labor, which was received on February 2, 1984.

8. Pursuant to 29 U.S.C. § 521, and in accordance with 29 U.S.C. § 482(b), plaintiff investigated the complaint, and as a result of the facts shown by this investigation, found probable cause to believe that violations of Title IV of the Act (29 U.S.C. § 481 *et seq.*) had occurred and had not been remedied at the time of the institution of this action. On March 30, 1984, the plaintiff filed this action alleging that the defendant violated 29 U.S.C. § 481(c) when it discriminated in favor of some candidates and against other with respect to member lists, and that the defendant violated 29

U.S.C. § 481(g) in that monies received by the defendant by way of dues, assessments, or similar levy were used to promote the candidacy of certain candidates in the election.

9. The violations of 29 U.S.C. § 481(c) alleged in the plaintiff's complaint specifically relate to charges made in Mefford's protest. With respect to alleged violation of 29 U.S.C. § 481(g), Mefford lacked the necessary information to be aware of the existence or scope of this allegation. Further, the defendant could have discerned a violation of this provision from Mefford's protest since he did allude to the postage meter violation.

10. J.L. "Bill" McGhee (McGhee) was the incumbent Business Manager/Financial Secretary-Treasurer of the defendant at the time of the election in question. He also was a candidate for and was elected to that position in the December 1983 election. McGhee died on or about October 1, 1984.

11. Reggie Sparks (Sparks) was the business agent of the defendant prior to the December 1983 election. He was also an incumbent member of the Executive Board. In the December 1983 election he was a candidate for and elected to the position of Executive Board Member. Sparks became acting business manager upon the death of McGhee.

12. At all times pertinent hereto Gerald L. Myers (Myers) has been administrator of the Plumbers and Pipe Fitters Local 553 Health and Welfare Insurance Trust (Health and Welfare Fund). He also performed administrative duties in relation to the defendant's pension fund. Although he had previously been a member of the Executive Board of Local 553, he had not occupied that position for some time prior to the December, 1983 election. In December, 1983 he ran for the office of Executive Board Member and was elected.

13. Larry Gordon Kline (Kline) was an unsuccessful candidate for the position of Business Manager/Financial Secretary-Treasurer in the December, 1983 election. Jim Tuetken was an unsuccessful candidate for president in the December 1983 election. Bill Metheny was an unsuccessful candidate for the Examining Board in the December 1983 election.

14. Prior to the election of December 1, 1983, candidate Larry Gordon Kline requested at least twice from McGhee, defendant's Business Manager/Financial Secretary-Treasurer a copy of the membership list for the purpose of conducting a campaign mailing. After some delay, Kline was ultimately shown a list which did not contain addresses and which included individual (contractors) who were not eligible to vote. (Plaintiff's Exhibit No. 8).

Bill Metheny never made a *formal* request for a mailing list. Although the testimony indicated that he may have asked Judith Hayes, a union secretary, for the mailing list, he never asked McGhee for one even though he realized that McGhee was probably the only one who could grant such a request. Further, Jim Tuetken never made a request for a mailing list or for any other help from the union for his election.

15. On or about November 25, 1983, Kline prepared and mailed a campaign letter only to those members whose addresses he had been able to obtain without the benefit of the defendant's mailing list or equipment. Kline was not advised, nor did he inquire whether the defendant would assist in mailing his literature through the use of its mailing list (addressograph plates) and equipment.

16. Although the Kline letter acknowledged a division of members in the Local, the clear import of the letter was to encourage his candidacy.

17. On November 28, 1983, candidates McGhee, Myers, and Sparks prepared and signed a response to the Kline letter. The response was mailed on the date to the full membership using the defendant's official addressograph plates. The following officers and employees of defendant devoted at least the time herein set forth in preparation of the letter of November 28, 1983 while being paid with funds of defendant local:

(1) Reggie Sparks prepared the letter with G.L. Myers. The time spent was approximately one hour. In addition, approximately 45 minutes were spent preparing material for mailing. The value of Spark's time was in excess of $40.25.

(2) Judith Hayes, secretary for the defendant, spent approximately 45 minutes typing and photocopying the letter. In addition, approximately 45 minutes were spent folding, stuffing, and sealing the envelopes for mailing. The value of Hayes' time was in excess of $40.25.

(3) J.L. McGhee reviewed and signed the letter. The value of McGhee's time was in excess of $6.25.

The following employees of the Health and Welfare Fund devoted at least the time herein set forth in preparation of the letter of November 28, 1983 while being paid with funds of the Health and Welfare Fund:

(1) Jerry Myers prepared the letter with Reggie Sparks. Time spent approximately one hour. In addition, approximately 45 minutes were spent in preparing material for mailing. The value of Myers' time was approximately $36.75.

(2) Faye Bridges spent approximately 45 minutes folding, stuffing, and sealing the envelopes for mailing. In addition she also addressed the envelopes. The value of her time was in excess of $10.00.

The stationery used in the mailing was taken from existing union supplies which had been purchased with funds of defendant local. The source of the materials used in the November 28, 1983 mailing is as follows:

(a) Envelopes were purchased by Local 553 Health and Welfare Fund from Buschard Office Supply, East Alton, Illinois. The envelopes were charged by Myers to the Health and Welfare Fund account on November 28, 1983. Approximately 450 envelopes were used.

(b) Paper was taken from the existing supply of the defendant. Approximately 450 sheets were used.

(c) Addressograph equipment was owned by the defendant in whole or in part.

(d) Addressograph plates were owned by the defendant in whole or in part.

(e) The postage meter was leased by the defendant from Pitney Bowes.

(f) The typewriter was owned by the defendant.

(g) The xerox machine was owned by the defendant in whole or in part.

New blank envelopes were purchased by Myers on the Health and Welfare Fund account because the only envelopes in stock bore union insignia. Funds expended by the Health and Welfare Fund were derived in part from the dues of members of the defendant.

18. The McGhee letter (plaintiff's exhibit No. 2) responded to the Kline letter, and as such was an election campaign letter attempting primarily to promote the candidacy of McGhee. Even though Sparks and Myers signed the letter it was not designed or intended to promote their candidacy. The letter attacked the Kline letter, pertained primarily to the office of Business Manager/Financial Secretary-Treasurer, and was written for the most part in the first-person singular form.

19. Although sample ballots were distributed associating various candidates with one another, each office was contested individually. Kline, Sparks, and Myers all testified to this effect.

20. At the time of the election, Local 553 had approximately 420 members, who were eligible to vote. The results of the December 1, 1983 election were as follows:

| POSITION | CANDIDATES | VOTES |
|---|---|---|
| BUSINESS MGR/FINANCIAL SECRETARY–TREASURER | J.L. "BILL McGHEE | 211 |
| | L.G. KLINE | 141 |
| PRESIDENT | BILL MATHIS, SR. | 200 |
| | JIM TUETKEN | 144 |
| VICE PRESIDENT | EDWARD BAKER | 205 |
| | LEO COLE, JR. | 143 |

| POSITION | CANDIDATES | VOTES |
|---|---|---|
| EXECUTIVE BOARD | JERRY MYERS | 234 |
| | REGGIE SPARKS | 214 |
| | MIKE CARSON | 204 |
| | BOB ARTERBERRY | 217 |
| | GARY McDONOUGH | 120 |
| | BILL BROWN | 119 |
| | HAROLD GRAY, SR. | 114 |
| | ED SCHENK | 112 |
| FINANCE BOARD | RON DAVENPORT | 212 |
| | DALE HEATHCOTT | 225 |
| | DAVE COLLINS | 204 |
| | RUSS THOMPSON | 124 |
| | KEN BATTUELLO | 110 |
| | KEN HARRELSON | 149 |
| EXAMINING BOARD | RAY CHAPMAN | 221 |
| | DALE LANGENWALTER | 211 |
| | DAN CARTER | 215 |
| | ERIC L. HAUN | 145 |
| | JACK LLEWELLYN | 119 |
| | BILL METHENY | 115 |
| RECORDING SECRETARY | JIM GOLTZ | 204 |
| | MIKE MAGIN | 114 |
| INSIDE GUARD | GLADE BARTH | 190 |
| | L. T. KLINE | 129 |

## CONCLUSIONS OF LAW

1. Jurisdiction of this action is conferred upon the Court by 29 U.S.C. § 482(b).

2. Venue in this district is proper since the defendant maintains its principal office in this district. 29 U.S.C. § 482(b).

3. Defendant, conducted an election of officers on December 1, 1983, which election was subject to the provisions of Title IV of the Act (29 U.S.C. § 481 et seq.).

4. Mr. Mefford exhausted his internal union remedies. He protested to the international representative and appealed the denial of his protest to the General President.

■ 5. Mefford's filing of a complaint with the Secretary of Labor was timely in that it was filed less than one calendar month after he exhausted his internal remedies. See 29 U.S.C. § 482(a).

6. Pursuant to 29 U.S.C. § 521, and in accordance with 29 U.S.C. § 482(b), plaintiff investigated the complaint and as a result of the facts shown by this investigation, found probable cause to believe that violations of Title IV of the Act (29 U.S.C. § 481 et seq.) had occurred and had not been remedied at the time of the institution of this action.

■ 7. The plaintiff has proper authority to bring suit against the defendant for a violation of 29 U.S.C. § 481(g) even though Mefford did not address this violation in his protest. The Supreme Court has indicated that where a union member lacks the necessary information to be aware of the existence or scope of some of the violations, the Secretary is justified in bringing suit on these violations unless the Union can prove that it could not in any way discern that the member was complaining of these violations. Hodgson v. United Steelworkers of America, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971). Here, the court has found that Mefford lacks the necessary

information and that the defendant could so discern.

8. The plaintiff's filing of this suit was timely in that it was filed within sixty days of the filing of Mefford's complaint with the secretary. 29 U.S.C. § 482(b).

9. The defendant violated 29 U.S.C. § 481(c) with respect to the election for the office of Business Manager/Financial Secretary-Treasurer when it discriminated in favor of McGhee and against Kline with respect to use of member lists in the course of the December 1, 1983 election.

10. The defendant violated 29 U.S.C. § 481(g) with respect to the election for the office of Business Manager/Financial Secretary-Treasurer when it used monies received by way of dues, assessments, or similar levy to promote the candidacy of McGhee through the publication and distribution of the November 28, 1983 letter.

11. The above two violations may have affected the election for the position of Business Manager/Financial Secretary-Treasurer.

A proved violation of the above provisions establishes a prima facie case that the violation may have affected the outcome of the election. *Wirtz v. Hotel, Motel & Club Employees Union*, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968). The burden then shifts to the Union to show by a preponderance of the evidence that the particular violation did not affect the outcome of the election. *Usery v. International Organization of Masters, Etc.*, 422 F.Supp. 1221 (S.D.N.Y.1976), *mod. on other grounds*, 538 F.2d 946 (2d Cir.1976). Here, the defendant has failed to meet its burden.

12. The Court specifically finds that the above violations only affected the election for the office of Business Manager/Financial Secretary-Treasurer. Therefore, only the election of that office is void. One court has held that if a violation affects one office, it voids the entire election for all offices. *Wirtz v. Local Union 169, International Hod Carriers*, 246 F.Supp.

741 (D.Nev.1965). This Court rejects this position and adopts what it believes to be the better reasoned position that the nature of the violation dictates whether or not the other offices were affected. *Usery v. Stove, Furnace & Allied Appliance Workers, Etc.*, 547 F.2d 1043, 1047 (8th Cir.1977). A candidate who did not benefit from the violation should not be deprived of an office he deserves. *Id.* Only when a violation effects the entire election should the entire election be made void.

Here, the violation occurred when the union allowed a candidate for one position to use the union mailing list and union monies to respond to a campaign letter sent out by his opponent. The defendant has been unable to convince this Court that these violations did not affect the election for that position. However, by the same token, the Court is convinced that these violations did not affect the election of any other office. The testimony was clear that each person ran individually. Further, the questioned letter primarily centered around the position of Business Manager/Financial Secretary-Treasurer. Absent a showing of some effect, the Court sees no reason to deprive the rest of the elected members their offices merely because they happen to be associated or aligned with a candidate whose position was affected.

13. The death of McGhee, and the subsequent election for the position of Business Manager/Financial Secretary-Treasurer is irrelevant to this proceeding and the plaintiff's remedy. The Secretary still has the right to seek to have the challenged election declared void and to direct the new election. *Wirtz v. Local 153 Glass Bottle Blowers Ass'n.*, 389 U.S. 463, 475, 88 S.Ct. 643, 650, 19 L.Ed.2d 705 (1968).

14. The Court hereby DECLARES the election for Business Manager/Financial Secretary-Treasurer held on December 1, 1983, and any intervening unsupervised election for that position, VOID, and DIRECTS that a new election for that position be immediately conducted under the Secretary of Labor's supervision, and so

far as lawful and practicable, in conformity with the Union's constitution and bylaws. The Court hereby DIRECTS the Clerk to enter judgment for the plaintiff and against the defendant.

IT IS SO ORDERED.

## ON MOTION TO DISMISS

This matter is before the Court on the plaintiff's petition for an order compelling compliance with the supervisory instructions of the Secretary of Labor (Document No. 34). Plaintiff brought this action under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 et seq. (LMRDA) seeking to hold the defendant's election of December 1, 1983 null and void. After a trial of the matter, the Court on July 1, 1985 declared the election for Business Manager/Financial Secretary Treasurer void, and the Court directed that a new election for that position be immediately conducted under the Secretary of Labor's supervision, and as far as lawful and practicable, in conformity with the Union's constitution and bylaws. The Court accordingly entered judgment for the plaintiff and against the defendant. Apparently because the Court did not invalidate the election with respect to every position, the plaintiff filed a notice of appeal from the judgment on August 29, 1985.

29 U.S.C. § 482(d) provides that an order directing an election not be stayed pending appeal. Accordingly, the parties met on September 4, 1985 to review the procedures for the new election. At this conference, the plaintiff advised the defendant that certain provisions of the United Association's constitution were in violation of the LMRDA, and therefore, would not be followed in the supervised election. Subsequently, the defendant refused to allow the plaintiff to disregard the challenged provisions in the supervised election. On November 3, 1985, the plaintiff filed the above petition seeking an order from this Court compelling the defendant to comply with the plaintiff's instructions. On November 20, 1985, the defendant filed a special appearance to dismiss the petition on the ground that the notice of appeal ousted this Court of jurisdiction. On January 22, 1986, the Court heard argument on the jurisdictional issue.

■ For a number of reasons, the Court agrees with the defendant. The general rule is that a notice of appeal transfers jurisdiction from the district court to the court of appeals. 9 Moore's Federal Practice, ¶ 203.11. "It divests the district court of authority to proceed further with respect to such matters, except in aid of the appeal, or to correct clerical mistakes ..., or in aid of execution of a judgment that has not been superseded, until the district court receives the mandate from the court of appeals." Id. (footnotes omitted). The plaintiff attempts to escape the application of the general rule by arguing that the language in 29 U.S.C. § 482(d) indicating that the order directing a new election not be stayed assumes that the district court would retain the authority to compel compliance with its order. The defendant insists that the proper court to compel compliance is the court of appeals.

The Court admits that the language of § 482(d) creates confusion in this case. The obvious rationale behind this section was to ensure that union elections were not held up by lengthy appeals. In the typical case, the district court orders an election, the union appeals, and a new election is held. The appellate court would generally review the case subsequent to the new election. If the appellate court affirmed the district court, no additional steps would be required since the new election had already taken place. If the appellate court would reverse, again no additional steps would be required since by reversing the district court the appellate court would merely affirm the results of the challenged election.

In the atypical situation, such as the case here, a different result occurs. The plaintiff has not achieved all the relief it requested at the district level, but a new election for one position has been ordered. By the language of § 482(d) this election must not be stayed pending appeal. However, if the appellate court would reverse this Court, another election would be neces-

sary for those positions that this Court did not order a new election.

Further complicating the above scenario is the fact that the defendant has not agreed to plaintiff's instructions for the new election. If the Court grants the relief the plaintiff now requests and orders the defendant to comply with the plaintiff's instructions, further delays would occur because at some point this order would be reviewable. By implication, the Court assumes that this order would also not be stayed pending appeal for otherwise the defendant could achieve a stay of the new election by merely refusing to comply with the instructions for the new election. A new election with the challenged instructions would probably occur before appellate review of the new election order. If the appellate court affirmed this Court's order directing a new election only as to the one election, the defendant would still seek subsequent review of the instructions. The appellate court could then disagree with this Court's order regarding the instructions, in which case a new election without the instructions would still be required. A more interesting result occurs if the appellate court reverses this Court's order and directs a new election as to all the positions. Prior to this ruling, a new election for the one position with the challenged instructions would have already occurred. The appellate court would then review the order regarding the instructions. If it disagreed with this Court, a new election for the one position would be required. But what if the new election for the other positions occurs prior to the appellate court's review of the instruction order? Presumably, the plaintiff would seek the same instructions for the election for these positions. Similarly, the defendant would seek review of the instruction order regarding these elections. The parties could be facing four new elections!

 The simple answer to these problems would be to hold that the stay language of § 482(d) does not apply when the

court orders an election and the Secretary appeals. Although the Court cannot find any legislative history [1] to support this construction, the Court simply does not believe that Congress envisioned this possibility. However, faced with the clear language in § 482(d), the Court is restrained from such a construction. On the other hand, equally clear is the language in § 482(d) which indicates that a new election order shall be appealable in the same manner as a final judgment in a civil action. With this in mind, and based on the general rule, the Court is inclined to find that the plaintiff's notice of appeal transferred jurisdiction to the appellate court. Although the concept of jurisdiction here is not statutory in nature, its purpose is to avoid the confusion and waste of resources which would result if the contrary position were adopted in this case.

Accordingly, the Court DENIES the plaintiff's Petition for Compliance (Document No. 34) and GRANTS the defendant's Motion to Dismiss (Document No. 36).

IT IS SO ORDERED.

---

**1.** It is interesting to note that the House version of this Bill granted the district court discretion

to stay the new election order.