Alexis **HERMAN**, Secretary
of Labor, Plaintiff,

v.

**AMERICAN POSTAL WORKERS
UNION AFL—CIO,**
Defendant.

No. Civ.A. 96–1803(EGS).

United States District Court,
District of Columbia.

Dec. 19, 1997.

Susan Catler, O'Donell, Schwartz, & Anderson, P.C., Washington, DC, for defendant.

Steven J. McCool, Assistant United States Attorney, Washington, DC, plaintiff.

### MEMORANDUM OPINION
### AND ORDER

SULLIVAN, District Judge.

This case is before the Court on cross-motions for summary judgment. This lawsuit was commenced by the Department of Labor ("DOL") against the American Postal Workers Union ("APWU") alleging violations of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"). *See* LMRDA § 401, codified at 29 U.S.C. § 481.

First, the DOL alleges that the APWU failed to provide adequate safeguards to insure a fair election, in violation of section

401(c) of LMRDA, by allowing Donald Chandler, who was convicted of aggravated assault, to run for a national union office. *See* 29 U.S.C. § 481(c). Second, the DOL alleges that the APWU denied its members the opportunity to vote for candidates of their choice in violation of section 401(e) of LMRDA by appointing someone to fill the office vacated by Mr. Chandler in light of his conviction. *See* 29 U.S.C. § 481(e).

Plaintiff seeks court orders declaring this election null and void and requiring the APWU to hold a new election under the Secretary's supervision. Defendant requests the Court to uphold the election and the subsequent appointment of a replacement for Chandler.

## BACKGROUND

The facts of this case are essentially uncontroverted. On April 18, 1995, Chandler was indicted on a charge of aggravated assault for attacking his estranged wife with a hammer. In June 1995, Chandler was nominated for the position of National Business Agent "B," Special Delivery Messenger Division, Southern Region in the 1995 APWU Election. At the time of his nomination, the APWU was of the opinion that Chandler was a member in good standing of the union.

On August 28, 1995, Chandler pled guilty to the charge of aggravated assault and he was sentenced on September 7, 1995 to fifteen years in jail. Chandler began serving his sentence that day. Ralph Brown, the president of Chandler's local union, testified on Chandler's behalf at the sentencing hearing. Mr. Brown contacted the national union office ("National") on the afternoon of September 11, 1995 to inform the National that Chandler had pled guilty to an offense in Georgia. This was the first communication of Chandler's criminal conduct to any National officer.

The ballots for the Agent B, Special Delivery Messenger Division, Southern Region had already been prepared, printed, and placed in

envelopes by the time Mr. Brown called the National.[1] The day after Mr. Brown's call, September 12, 1995, more than 250,000 ballots were sent out to APWU members across the country. On October 5, 1995, Chandler won his election.

The LMRDA prohibits any person convicted of certain enumerated crimes from holding union office for a period of thirteen years after any period of incarceration. *See* 29 U.S.C. § 504(a). The enumerated crimes are: robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violations of narcotic laws, murder, rape, assault with intent to kill and assault which inflicts grievous bodily injury. *Id.* Aggravated assault, the offense for which Chandler was convicted, is not specifically included in this list but section 504 crimes have been held to include crimes which are equivalent to one of the enumerated offenses. *See Berman v. Local 107, International Brotherhood of Teamsters,* 237 F.Supp. 767, 771 (E.D.Pa. 1964); *Illario v. Frawley,* 426 F.Supp. 1132, 1139–40 (D.N.J.1977). The Department of Justice ("DOJ"), the agency charged with enforcing section 504, has since concluded that the aggravated assault to which Chandler pled guilty is the equivalent of assault which inflicts grievous bodily injury. Thus, Chandler's crime precludes him from holding a union office for thirteen years after his incarceration.

## ANALYSIS

As the Supreme Court has noted, "no right is more precious in a free country than that of having a voice in the election of those who make the laws under which ... we must live. Other rights ... are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). The LMRDA was enacted in order to guarantee " 'free and democratic' union elections modeled on 'political elections in this country.'" *Local 3489, United Steelworkers of America v. Usery,* 429 U.S. 305, 309,

---

1. In fact, the ballots for all of the 1995 APWU elections had already been prepared and placed in envelopes by this time. There were approximately 250,000 ballots in total. The APWU states that it could not distinguish which envelopes contained ballots for the National Business Agent "B", Special Delivery Messenger Division, Southern Region election and thus, it contends it would have had to open all 250,000 envelopes to find those for Chandler's election. *See* Def.'s Mot. for Summ. J., at 5–6.

97 S.Ct. 611, 50 L.Ed.2d 502 (1977) (citation omitted). The objective of Congress was to "protect the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self-government and, through the election process, to keep the union leadership responsive to the membership." *Id.*

### A. Violation of LMRDA Section 401(c)

The law in this area is well-settled. Under section 401(c), plaintiff must show that the APWU failed to provide adequate safeguards to insure a fair election. *See* 29 U.S.C. § 481(c).

■ Plaintiff argues that the union knew that Chandler had been convicted of aggravated assault *before* the ballots were mailed out. Plaintiff cites as analogous a case in which a candidate died three days before the election and the union failed to remove the decedent's name from the ballot. *See DeArment v. Local 563*, 751 F.Supp. 1364 (D.Minn. 1990).

In *DeArment*, the union decided to leave the deceased candidate's name on the ballot to allow votes for him to count as protest votes against the other candidates. The court ruled that "[d]espite the best intentions of the union, ... the union's failure to remove the [deceased's] name from the ballot violate[d] section 401(c) of the [LMRDA]." *Id.* at 1365. The court further noted that "[i]t seems ... that an absolute minimum requirement of a fair and democratic election is that only the names of actual candidates appear on the ballot." *Id.* at 1366. Thus, the court granted plaintiff's motion for summary judgment concluding that as a matter of law, the union had violated section 401(c). *Id.*

The APWU attempts to distinguish *DeArment*, pointing out that there is no uncertainty as to the eligibility of a dead candidate. Here, the APWU argues, for a significant period of time, it could not be certain whether Chandler's conviction made him ineligible to hold union office.

The APWU also advances several other arguments. First, the union argues that this case is really about candidate eligibility and

that section 401(c) does not address candidate eligibility. *See Brock v. Writers Guild of America*, 762 F.2d 1349, 1351–54 (9th Cir. 1985). In *Brock*, the issue before the court was whether section 401(c) prohibited supervisors from running in union elections, that is, whether supervisors were *eligible* to run in union elections. The *Brock* court concluded that section 401(c) did not apply to candidate eligibility issues but rather applied to election procedures. *Id.* at 1353–54.

This Court disagrees with the APWU's characterization of the issue in this case. The issue here is not Chandler's eligibility to hold union office. The DOJ has concluded that under section 504 Chandler was ineligible to hold union office and indeed, neither party disputes this conclusion. Rather, the question here is what *procedures* the APWU should have used to insure a fair election once it was on notice of Chandler's criminal conviction. Furthermore, courts in similar cases have indeed held that section 401(c) prohibits placing the names of ineligible candidates on a ballot. *See, e.g., DeArment*, 751 F.Supp. at 1365–66. Thus, this Court concludes that *Brock* is not instructive in the present case.

Second, the APWU argues that even if this is a procedural issue, section 504 prohibits a person convicted of certain crimes from *holding* office, not *running* for office. Third, the APWU argues that it was unclear whether Chandler was unable to hold union office under section 504. The APWU asserts that the DOL itself had to seek an advisory opinion from the DOJ as to whether Chandler's crime, aggravated assault, was equivalent to one of the enumerated crimes in section 504. Thus, the APWU argues that the DOL is holding the APWU to a standard that the DOL itself could not meet.

Fourth, the APWU argues that it was logistically impossible for it to take Chandler's name off the ballot. The National headquarters did not learn of Chandler's crime until the afternoon before the ballots were to be sent out. Furthermore, it con-

tends that it had no documentation or confirmation of Chandler's guilty plea or sentence.[2]

The Court has carefully considered each of APWU's arguments and finds them unpersuasive. The Court finds that the APWU created the problem in which it now finds itself. The APWU knew prior to mailing out the ballots that Chandler had been convicted of aggravated assault and sentenced to fifteen years in jail. This, at the very least, should have raised substantial concerns about leaving Chandler's name on the ballot. Yet the APWU did absolutely nothing to address the problem it should have recognized.

By leaving Chandler's name on the ballot, the APWU was in a no-lose situation. It could allow the election to go forward and hope that Chandler would not win. If Chandler did indeed win, the APWU could fill the vacancy with someone of *its* choosing pursuant to its Constitution. Thus, the APWU's failure to remove Chandler, an ineligible candidate, from the ballot violated section 401(c) because the APWU failed to provide adequate safeguards to insure a fair election.

### B. Violation of LMRDA Section 401(e)

■ Section 401(e) of the LMRDA provides that "every member in good standing . . . shall have the right to vote for . . . the candidate or candidates of his choice." *See* 29 U.S.C. § 481(e). Plaintiff alleges that the APWU also violated section 401(e) by appointing someone to fill the office vacated by Chandler. Plaintiff asserts that this appointment deprived union members of their right to vote.

The APWU, on the other hand, argues that it did not violate section 401(e) because it did not deprive union members of their right to vote. Members voted for the candidate of their choice, Chandler. After Chandler won the election and it was determined that he could not hold office, the APWU

followed the procedures in its Constitution and appointed a replacement for Chandler.

The Court finds that the APWU violated section 401(e). By leaving Chandler's name on the ballot, the APWU deprived union members of any meaningful right to vote. One hundred and twelve union members cast their votes for an *ineligible* candidate. Once this ineligible candidate won the election, the APWU was able to replace him with a candidate of its choice. This can hardly comport with the requirements of section 401(e) and indeed undermines the precious right to vote that the *Wesberry* Court recognized.

### C. The Election "May Have Been Affected"

■ Once a violation of section 401 has been found, section 402 of the LMRDA requires the District Court to declare an election null and void and to order a new election under the Secretary's supervision if the Secretary proves a violation of Section 401 which "may have affected the outcome" of the election. *See* 29 U.S.C. § 482(c); *see also Marshall v. APWU*, 486 F.Supp. 79, 81 (D.D.C. 1980). The "may have affected the outcome" standard is a "liberal" one. *Marshall*, 486 F.Supp. at 82.

There is no doubt that the APWU's actions here affected the outcome of the election.[3] Indeed, defendant never seriously argues that the outcome of the election was not affected by the decision to leave Chandler on the ballot. Undoubtedly, if the APWU had removed Chandler's name from the ballot, the outcome of the election would have been different.

Thus, the Court concludes that the APWU violated sections 401(c) and 401(e) of the LMRDA and that these violations "may have affected the outcome" of the election. It is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED;** and it is

---

2. The Secretary–Treasurer of APWU who is involved with the election process, Douglas Holbrook, testified in his deposition, however, that if a candidate was mistakenly omitted from the ballot, "I think the [election] committee would have to take some action to correct that." Pl.'s Mot. for Summ. J., Ex. 8, at 21.

3. There were four candidates in this election. Chandler received 112 votes; William R. Parrish received 72 votes; Richard A. Phillips received 60 votes; and William H. Bigham received 16 votes. Pl.'s Mot. for Summ. J., Ex. 4.

**FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **DENIED;** and it is

**FURTHER ORDERED** that the 1995 APWU election for the office of National Business Agent "B," Special Delivery Messenger Division, Southern Region is declared null and void; and it is

**FURTHER ORDERED** that a new election for said office shall take place under the supervision of the Secretary of Labor **within sixty days** from the date of this order; and it is

**FURTHER ORDERED** that the Clerk shall enter final judgment for plaintiff Alexis Herman, Secretary of Labor, and against defendant American Postal Workers Union.