Alexis M. **HERMAN**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**LOCAL 1695, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, AFL–CIO, Defendant.**

No. CIV. A. 99–1860.

United States District Court, E.D. Pennsylvania.

Aug. 16, 2000.

---

**13.** 28 U.S.C. § 2254(d)(1):

Anthony G. O'Malley, Jr., Philadelphia, PA, for Plaintiff.

William T. Josen, Philadelphia, PA, for Defendant.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

The plaintiff in this action, Secretary of the United States Department of Labor Alexis M. Herman ("Secretary"), alleges that defendant Local No. 1695 of the United Automobile, Aerospace & Agricultural Implement Workers of America ("Local") violated Title IV of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 481, *et seq.*, ("Title IV") during two elections held in May 1998 and March 1999. The Secretary seeks a court order voiding those elections and directing a new election to be held under her supervision, pursuant to 29 U.S.C. § 482(c). Both parties have filed motions for summary judgment. For the following reasons, the motion of the Secretary will be granted and the motion of the Local will be denied.

## I. BACKGROUND

There is no dispute about the facts in this case. On March 5, 1998, the Local held elections for various union posts. The contest for the office of Financial Secretary–Treasurer, which the Secretary challenges in this action, resulted in the election of Barbara Peterson over incumbent Audrey Evans by a vote of 676 to 654. Two candidates for other offices protested the election to the International Union of the United Automobile, Aerospace & Agricultural Implement Workers of America ("International"). When the International failed to respond to the protest for 90 days, the two candidates filed a formal complaint with the Secretary of the United States Department of Labor ("DOL").[1]

As is her duty under Title IV of LMRDA, the Secretary of Labor commenced an investigation into the complaint. *See* 29 U.S.C. § 482(b). The investigation was conducted by the district director of the DOL's Office of Labor–Management Standards, Debra J. Hall, and concluded on November 3, 1998. Hall informed the leadership of the Local and International of the following preliminary findings:

1. Local 1695 failed to provide Robert Leiss and Kenneth Hurd, bona fide candidates in the May 5, 1998 election, the right to inspect the membership list once within 30 days prior to the election in violation of Section 401(c) of the LMRDA.

2. Local 1695 funds were used to promote the candidacy of certain candidates in that the union equipment, i.e. telephones, were used by retirees to campaign for incumbent officers in violation of Section 401(g) of the LMRDA.

3. Local 1695 failed to maintain election records (ballots) for at least one year in violation of Section 401(e) of the LMRDA.

(Defendant's Exh. B, Letter of Debra J. Hall, District Director of Office of Labor–Management Standards, Nov. 3, 1998). Subsequent discussions among Hall, and representatives of the International and the Local led to a settlement agreement that was memorialized in a letter written by the president of the International and acknowledged in a subsequent letter from the DOL. (Plaintiff's Exh. 2, Letter from Steven Yokich, President, International Union, United Automobile, Aerospace & Agricultural Workers of America, Dec. 21, 1998; Defendant's Exh. C, Letter of Debra J. Hall, District Director of Office of La-

---

1. Under the exhaustion requirements of Title IV, a member of a labor organization may file a complaint with the Secretary of Labor after invoking available union remedies "without obtaining a final decision within three calendar months after their invocation." 29 U.S.C. § 482(a)(2). There is no dispute that the candidates heard nothing from the union for more than 90 days after filing their complaint, and thus the claim was properly exhausted under § 482.

bor–Management Standards, Dec. 29, 1998).

Under the voluntary settlement agreement, the International and Local acknowledged that the May 5, 1998, election was invalid, and requested that the Secretary of Labor supervise a new election of all union officers, "in accordance with Title IV of the LMRDA and, insofar as lawful and practicable, in conformity with the Bylaws and the UAW Local 1695 and the UAW International Constitution." (Plaintiff's Exh. 2, Letter from Steven Yokich, President, International Union, United Automobile, Aerospace & Agricultural Workers of America, Dec. 21, 1998). The letter from the International included language specifying "the right of the Secretary of Labor to continue said investigation and to initiate any legal proceedings based on violations of Title IV is to be reserved until April 13, 1999." (*Id.*). Furthermore, the letter contained a clause addressing interpretive disputes:

> The UAW further agrees that any dispute arising during the course of the supervised election, as to the legality or practicability of any election procedure and concerning all decisions as to the interpretation or application of Title IV or the LMRDA, shall be decided by the representative of the Secretary of Labor and shall be final.

(*Id.*). The rerun of the Local election was slated for March 9, 1999.

A dispute arose during the preparations for the supervised, rerun election. Soon after the May 1998 election, the Local conducted an audit of its finances, and discovered that Audrey Evans, who held the position of Financial Secretary–Treasurer and failed in her bid for re-election in May 1998, was severely delinquent in her payment of union dues. The auditor informed Evans of his discovery by letter on October 7, 1998, and the current Financial Secretary–Treasurer Barbara Peterson, who had defeated Evans in the May 1998 election, informed Evans that her delinquency prevented her from, among

other things, voting in any election or holding union office. (Plaintiff's Exh. 5, Letter from Barbara Peterson, Financial Secretary–Treasurer, UAW Local 1695, Oct. 19, 1998). The complete findings of the audit were reported to the officers and members of the Local on November 5, 1998. Included on the second page of that report was the auditor's finding that Audrey Evans was a delinquent member "not entitled to received strike insurance benefits in the event of a strike, attend union meetings, vote in an Union election or serve the Union in any capacity." (Plaintiff's Exh. D, Report of Audit of UAW Local 1695, Nov. 6, 1998, Exh. 1 to Deposition of David Shell III, Auditor). Evans was the only Local union member found to be delinquent. (*Id.*).

At a pre-election conference conducted on February 2, 1999, DOL representative Debra Hall raised the issue of Audrey Evans' dues delinquency and its impact on the election for Financial Secretary–Treasurer. Because Evans was not a member in good standing due to her failure to pay dues, she could not hold any office, even if elected. Hall argued that the nominations for Financial Secretary–Treasurer should be reopened to select a viable candidate to run in opposition to Barbara Peterson. Eunice Stokes, assistant to the president of the International, responded that there were no flaws in the nominations process for the May 1998 election, and therefore the nominations were closed and could not be reopened. A disagreement ensued, and "it was decided that the UAW International and the Department [of Labor] agreed to disagree, deferred the issue to the Secretary of Labor and agreed to address the issue at a later date." (Defendant's Exh. D, Pre Election Conference Summary, Feb. 2, 1999, at 2). Subsequent discussions bore no fruit; the union refused to abide by the Secretary's insistence that nominations be reopened and a new election take place without Evans on the bal-

lot.[2]

The election went ahead on March 9, 1999, despite the objections of the Secretary of Labor, despite the fact that Evans was known to be no longer a member in good standing eligible to hold office, and despite Evans' insistence that she be removed from the ballot.[3] Barbara Peterson was re-elected over Audrey Evans by a tally of 881–662.

On April 13, 1999, the Secretary of Labor commenced this action, alleging that the Local had violated the provisions of Title IV of LMRDA, 29 U.S.C. § 481(e),[4] and the terms of the December 21, 1998 voluntary settlement agreement by allowing Evans to remain on the ballot for the March 1999 rerun despite her lack of good standing. The Secretary seeks to void both the May 1998 election and the March 1999 rerun election solely as to the office of Financial Secretary–Treasurer; to reopen nominations for that position under the supervision of the Secretary of Labor; and to have the Court enforce the terms of the December 1999 settlement agreement.

## II. ANALYSIS

In deciding a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (citing *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994)). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250, 106 S.Ct. 2505.

On a motion for summary judgment, the facts should be reviewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue

---

**2.** On March 5, 1999, approximately six months after the audit revealed the delinquency of Evans' dues, the president of the International was notified by an inter-office memorandum that Evans had falsified union records to make it appear that she had paid up on her dues, when in fact, for six years, she had paid little or nothing in the way of dues. (Plaintiff's Exh. 8, Letter from Ruben Burks, International Secretary/Treasurer, Mar. 5, 1999). The memorandum recommended initiation of procedures to prevent her from seeking or holding office in the future. Three days after the election, International president Stephen P. Yokich informed Evans that she was under investigation for financial misconduct. (Plaintiff's Exh. 9, Letter of Stephen P. Yokich, Mar. 12, 1999). On March 23, 1999, the International president declared Evans ineligible to hold or seek any position in the Local Union. (Plaintiff's Exh.

10, Letter of Stephen P. Yokich, Mar. 23, 1999).

**3.** A month before the election took place, Evans informed the Department of Labor and the International that she had no desire to appear on the ballot in the rerun election. (Plaintiff's Exh. 6, Letter of Audrey Evans, Feb. 9, 1999).

**4.** 29 U.S.C. § 481(e) reads, in pertinent part, "In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office.... The election shall be conducted in accordance with the constitutional and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter."

of material fact and avoid summary judgment. *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

## A. Title IV of the Labor Management Reporting and Disclosure Act

Among the seven sections of LMRDA, Title IV plays the unique role of preserving "free and democratic elections" in labor unions. *Wirtz v. Glass Bottle Blowers Ass'n Local 153*, 389 U.S. 463, 470, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968).[5] To that end, Congress granted the Secretary of Labor the exclusive power to enforce the terms of Title IV. *See Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousmen & Packers Local 82 v. Crowley*, 467 U.S. 526, 549, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984). In *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), the Supreme Court described the Secretary's Title IV enforcement role in this way:

> Title IV sets up a statutory scheme governing the election of union officers ... and attempting to guarantee fair union elections in which all the members are allowed to participate.... It is apparent that Congress decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest.... Reliance on the discretion of the Secretary is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts.

*Id.* at 140, 85 S.Ct. 292.

The Secretary's broad, discretionary enforcement authority under Title IV is triggered when a union member who has exhausted her claim at the union level timely files a complaint with the Secretary. *See* 29 U.S.C. § 482(a). The Secretary then investigates the claim and, if she finds probable cause to believe that Title IV has been violated, may file suit in a district court. *See* 29 U.S.C. § 482(b). If a court finds that a violation of Title IV took place, and that that violation "may have affected the outcome of an election," the court must void the election and order a new election to be held under the supervision of the Secretary of Labor. *See* 29 U.S.C. § 482(c).

## B. Status of the Case and Burden of Proof

█ The first issue I must address is the procedural posture of this case, as it determines which party bears the burden of proof and what that burden is.[6] This case has not followed the usual trajectory of a Title IV case; the Court did not become involved after the first election and order a new election supervised by the Secretary of Labor as is typical under § 482(c). Instead, the parties entered into an agreement which required a new election to be held under the supervision of the Secretary.[7]

---

5. In its hearings leading up to the passage of LMRDA, Congress found "from recent investigations in the labor and management fields, that there have been a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct" at such a level that supplemental legislation was necessary to preserve the "necessary protection of the rights and interests of employees and the public generally as they related to the activities of labor organizations...." 29 U.S.C. § 401(b).

6. Surprisingly, neither party addressed the critical threshold question of the burden of proof in their briefs.

7. The parties offer divergent perspectives on where this case now stands. The Secretary considers this case to be akin to a breach of contract case, in that the Local and the International violated the settlement agreement by refusing to abide by the determination of the Secretary's representative that the nominations for Financial–Secretary/Treasure should have been reopened and the election should

What was the effect of that settlement agreement? I conclude that the voluntary settlement was akin to a court order directing the Secretary to supervise a union election after concluding that a violation had taken place. The settlement's impact on the election process was identical to a Court order pursuant to § 482(c); it required a new election to be held under the supervision of the Secretary of Labor. Furthermore, the settlement agreement closely tracked the language of the Title IV language addressing court-ordered elections, 29 U.S.C. § 482(c), requiring "a new election under the supervision of the Secretary ... and insofar as lawful and practicable, in conformity with the Bylaws of UAW Local 1685 and the UAW International Constitution." (Plaintiff's Exh. 2, Letter from Steven Yokich, President, International Union, United Automobile, Aerospace & Agricultural Workers of America, Dec. 21, 1998).[8] Thus, I conclude the March 1999 election was virtually the same as a court-ordered rerun election, supervised by the Secretary of Labor.

Courts routinely issue orders for such elections under Title IV, and the law is clear on the matter. Title IV provides that upon the completion of a court-ordered election supervised by the Secretary, the Secretary shall "promptly certify to the court the names of the persons elected, and the court shall enter a decree declaring such persons to be officers of the labor organization." 29 U.S.C. § 482(c).

However, "[t]he Secretary has an obligation to refuse to certify a supervised election when it is apparent that the election was conducted in violation of the law." *See Martin v. International Brotherhood of Teamsters, Local 996,* No. 89–241, 1991 WL 346365, 1991 U.S. Dist. LEXIS 21627, at *5 (D.Ha. Aug. 12, 1991) (citing *Brennan v. Sindicato Empleados De Equipo Pesado,* 370 F.Supp. 872, 880 (D.P.R. 1974)).

■■■ That is essentially where this case now stands: the Secretary refuses to certify the results of an election that was to be held under her supervision. Because Title IV relies on the "special knowledge and discretion of the Secretary for the determination of both the probable violation and the probable effect, ... the reviewing court is not authorized to substitute its judgment for the decision of the Secretary...." *Dunlop v. Bachowski,* 421 U.S. 560, 571, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). Thus, the Secretary's determination as to whether or not to certify an election that was to be supervised by her is subject to only an arbitrary and capricious standard of review, and will only be overturned if "manifestly arbitrary or irrational." *Brock v. Metro. Dist. Council,* 653 F.Supp. 289, 296 (E.D.Pa.1986) (citing *Brennan v. United Auto., Aerospace & Agricultural Implement Workers Local 551,* 486 F.2d 6, 8 (7th Cir.1973)); *Martin v. Int'l Org. of Masters, Mates and Pilots,* 786 F.Supp. 1230, 1236 (D.Md.1992); *see*

---

not have been held with Audrey Evans on the ballot. The union argues that the case is a basic Title IV case brought in the first instance by the Secretary for a violation discovered as a result of a union member's complaint. Neither perspective is particularly accurate or helpful. The Secretary has not asserted a breach of contract claim (there is no such thing under Title IV); she has asserted a claim under the Title IV enforcement authority vested in her by 29 U.S.C. § 482. The union's argument is equally misguided; to interpret this case as a basic Title IV case would be to ignore the decisive effect of the settlement agreement. I believe the perspective that is most consistent with Title IV, and that provides the Court with the most guid-

ance as to the burden of proof and the appropriate analysis, is the one spelled out in the text: that this case is at the post-election certification stage of a typical Title IV case, and the Secretary has refused to certify a supervised election. From this perspective, we are on familiar ground, as numerous other courts have addressed the proper approach to such circumstances pursuant to 29 U.S.C. § 482(c).

8. The nearly identical language from § 482(c) reads, "the court shall ... direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization."

*also Dunlop*, 421 U.S. at 571, 95 S.Ct. 1851; *but see Donovan v. International Brotherhood of Teamsters, etc., Local 299*, 515 F.Supp. 1274, 1286 (E.D.Mich.1981) (holding that when refusing to certify an election he supervised, the secretary must do more than show that his decision was not arbitrary and capricious, and instead must prove that there were in fact violations that may have affected the outcome of the supervised election).[9]

## C. The Secretary's Interpretation

■ Thus, the question before me today is whether it was arbitrary or irrational for the Secretary to conclude that a violation of Title IV and the UAW International Constitution took place that may have affected the outcome of the March 1999 election the Local. After a thorough review of the record and consideration of the arguments of both parties, I conclude that the Secretary's determination was neither arbitrary nor capricious; to the contrary, it was rational and reasonable.

The representative of the Secretary, Debra Hall, interpreted the UAW International Constitution, Article 16, § 8,[10] which provides that a dues delinquency effects an automatic removal of a union member's good standing, and Article 38, § 3, which provides that a union member must be in good standing to be eligible for a union member,[11] to prohibit a union member delinquent in her dues from running for or holding union office. Because there was no question that Audrey Evans had not paid her dues, Hall concluded that Evans was ineligible to hold office, and asked that

Evans' name be removed from the ballot and nominations for the position of Financial Secretary/Treasurer be reopened. The International and the Local refused, arguing on the basis of Article 38, § 2 of the UAW International Constitution, that once the nominations process was closed, the names of the nominees must appear on the ballot unless something was amiss with the nominations process, and that Evans could only have been rendered ineligible to hold office through the procedures set forth in Article 48, § 5 of the UAW International Constitution. Because no one knew of Audrey Evans' dues delinquency at the time of her nomination for the May 1998 election, the International and Local contended, she was properly nominated and therefore required to appear on the ballot, despite the fact that she was later discovered to be ineligible to hold office. Despite the objections of the Secretary's representative, the Local and the International did not reopen nominations and held the election with Evans on the ballot.

■ I conclude that the interpretation of the Secretary is not unreasonable or irrational. The UAW International Constitution provides that a union member is "automatic[ally]" no longer in good standing when she becomes delinquent on her dues, and that a member must be in good standing to hold union office. There is no dispute that Audrey Evans was delinquent on her dues, and therefore she was no longer a member in good standing and therefore ineligible to hold office. The Secretary could reasonably have determined that to hold an election where one

9. The burden in this case thus differs, both with respect to the level of the burden, from a typical Title IV case brought in the first instance, under which the Secretary bears the burden of proving by a preponderance of the evidence that a violation of 29 U.S.C. § 481 took place. *See* 29 U.S.C. § 482(c); *Wirtz v. Hotel, Motel & Club Employees Union Local 6*, 391 U.S. 492, 506–07, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968).

10. Art. 16, § 8 of the UAW International Constitution provides:

Any member who has not paid her/his dues during the calendar month in which they are due shall automatically become delinquent except as otherwise provided in this Article. In order to regain good standing membership, s/he must fully reinstate her/himself in Accordance with Section 9 of this Article.

11. Art. 38, § 3 of the UAW International Constitution requires, among other things, that a member be in good standing to be eligible to hold union office.

of the two candidates was ineligible for the office would deprive union members of a meaningful opportunity to elect a union officer and essentially render the election a sham. The Secretary also could have reasonably concluded that the UAW International Constitution provision requiring validly nominated individuals to appear on the ballot did not account for a circumstance in which one of the nominated parties was ineligible to hold office.[12]

The reasonableness of this view is supported by two district court cases in which courts held it to be a violation of Title IV to allow an ineligible person to remain on a ballot. *See Herman v. American Postal Workers Union,* 995 F.Supp. 1 (D.D.C. 1997) (invalidating election in which a union member who was a convicted criminal, and therefore ineligible for union office, remained on the ballot); *DeArment v. Laborer's Int'l Union Local 563,* 751 F.Supp. 1364 (D.Minn.1990) (holding that Title IV was violated when a dead candidate was left on ballot).[13] Thus, I conclude as a matter of law that neither the Secretary's view that Title IV and the UAW International Constitution would be violated by the conduct of an election involving an ineligible candidate (such as Audrey Evans), nor her consequent demand that the nominations for Financial Secretary–Treasurer be reopened, was arbitrary.

█   Likewise, I conclude that the Secretary's determination that keeping Audrey Evans on the ballot may have affected the outcome of the election was neither arbitrary nor capricious. Once the Secretary makes out a *prima facie* case of a violation of Title IV (and I conclude she has) the burden shifts to the union to show that the violation had no effect on the outcome of the election. *See Wirtz v. Hotel, Motel & Club Employees Union Local 6,* 391 U.S. 492, 506–07, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968). The union has made no effort to show that its refusal to reopen nominations for the office of Financial Secretary–Treasurer, and its decision to hold the election despite the fact that one of the two candidates was known to be ineligible to hold office, had no effect on the March 1999 election's outcome. Though it is not her burden, the Secretary has produced evidence that others would have vied for the position of Financial Secretary–Treasurer had Audrey Evans not run. (Plaintiff's Exh. 13, 14, and 15, Affidavits of Ruth Ann Donchez, Emily Whiteman, and Jean Agudio). Thus, I conclude that the Secretary has shown that the outcome of the March 1999 election may have been affected by a violation if Title IV.[14]

12. The Local also argued to the Secretary, and argues to this Court, that Evans could only have been rendered ineligible for office through the union procedure set forth in Article 48, § 5. Article 48 is aimed at financial misconduct and misuse of union funds, and establishes procedures by which such violations of the union trust may be remedied, including the reimbursement of funds and suspension from union office or candidacy. Article 48, however, does not address the delinquency of dues payments, and it cannot be read to be the exclusive recourse when a member dues balance is in arrears. As discussed above, Article 16, § 8 and Article 38, § 3, directly address the issue of dues delinquency and appear to provide a remedy; the automatic ineligibility of a union member. Thus, it is reasonable not to view Article 48 as the exclusive remedy for dues delinquency. In fact, it would be reasonable to interpret Article 48 not to apply to a dues deficit at all. I conclude that the Secretary's decision that

Article 48, § 5, was not the sole means by which Evans could have been rendered ineligible to hold office was neither arbitrary nor capricious.

13. If the Secretary determined that the election was being held in a manner inconsistent with the constitution and the bylaws of the Local, then she would have no choice but to conclude that the election was being held in violation of Title IV. *See* 29 U.S.C. § 481(e). Moreover, the Secretary could reasonably conclude that under the language of § 481(e), only members in "good standing" are eligible for election. *See id.*

14. The Secretary's interpretation is entitled to even greater deference in this case than in a typical Title IV election certification situation, because both parties agreed that interpretive controversies would be decided by the Secretary's representative. (Plaintiff's Exh. 2, Letter from Steven Yokich, President, Interna-

## D. Exhaustion

■ Defendant argues that the Secretary may not bring this suit because the violation she challenges was not exhausted as required by Title IV, 29 U.S.C. § 482. Invoking the Supreme Court's holdings in *Wirtz v. Laborer's Int'l Union,* 389 U.S. 477, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968) and *Hodgson v. United Steelworkers of America,* 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971), defendant contends that the Secretary may prosecute violations only after they are first raised to the union by the complaining union member and the union is given an opportunity to remedy the violation.[15] The Secretary may not, argues the defendant, challenge any violation she discovers during her investigation of the violations raised in the complaint of the union member. Because is clear that the violation the Secretary is attempting to prosecute is wholly unrelated to the matters raised in the complaint that triggered the Secretary's investigation, *see supra* text, at 2, thus, defendant concludes, the Secretary is acting beyond the scope of her authority in bringing this suit.

However interesting defendant's argument may be, it is inapposite in the face of the settlement agreement and the procedural posture of this case. The Secretary is not asserting a basic violation of Title IV; as noted above, the Secretary is attempting to enforce a voluntary settlement agreement and refusing to certify an election she was required to supervise on the ground that the election contained irregularities and the union refused to defer to her supervisory authority. Thus, the question is not whether the violation alleged by the Secretary was exhausted; the

tional Union, United Automobile, Aerospace & Agricultural Workers of America, Dec. 21, 1998). The Local and the representative of the Secretary had a dispute over whether it was legal or practicable to conduct an election in which one of two candidates was indisputably ineligible to hold union office. Though the Local was required to defer to the judgment of the Secretary's representative as to the dispute, the Local did not defer; rather, it held an election under circumstances that the Secretary's representative deemed a violation of the UAW International Constitution and Title IV. The Local's protestations that the Secretary and this Court, should defer to the Local's interpretation of their constitution and bylaws are completely without merit in the face of the agreement that requires the Local to defer to the Secretary's representative.

15. In *Wirtz,* the Court held that the Secretary of Labor had the authority to prosecute unexhausted Title IV violations identical to those raised in the complaint with the union that took place at times other than those specified in the complaint. In *Hodgson,* the Court held that the Secretary did not have the power to challenge unexhausted violations that were "wholly unrelated" to those alleged in the complaint before the union when the complaining union member knew of the violation but did not report it to the union.

This case involves a factual circumstance unlike that in *Wirtz* or *Hodgson,* and thus presents a question not answered by the narrow holdings of those cases: may the Secretary challenge any unexhausted violation dissimilar to those raised before the union and *not* known to a complaining union member? The Secretary argues that *Wirtz* and *Hodgson* stand for the proposition that the Secretary may prosecute any violation of Title IV she uncovers, so long as that violation was not known to the complaining union member.

I am not certain this is true. The Secretary's interpretation would have the effect of reading the exhaustion requirement out of the statute. *See Hodgson,* 403 U.S. at 340, 91 S.Ct. 1841 ("Exhaustion would be accomplished given any sort of protest within the union, no matter how remote the complaint made there from the alleged violation later litigated."). I fail to see why an unexhausted violation that was unknown to the complaining union member should be any more worthy of prosecution by the Secretary than an unexhausted claim of which the complaining union member knew. Whether the violation is known or unknown to that union member, it has not been presented to the union and the union has had no opportunity to remedy the violation prior to the Secretary's involvement. Unless an unexhausted violation is sufficiently similar to those raised in the union member's complaint to give the union notice, as in *Wirtz,* it seems to me that the union should be provided with notice and an opportunity to remedy the violation prior to an the commencement of an investigation and civil action by the Secretary.

case is well beyond that stage. Rather, the question is whether the Secretary's determination that the election took place in a manner in consistent with Title IV and the settlement agreement, and the Secretary's refusal to validate the election on those grounds, were arbitrary and capricious. For the reasons discussed above, I have concluded that the Secretary's position is neither arbitrary nor irrational; accordingly, defendant's exhaustion contentions are without merit.

## III. CONCLUSION

There are no factual issues remaining in this case. The parties do not dispute the factual record; they simply disagree over the law. I have concluded as a matter of law that the Secretary's determination that the March 1999 election the union agreed that she would supervise was carried out in a manner inconsistent with Title IV of LMRDA was neither arbitrary nor capricious. Therefore, the Secretary is entitled to judgment as a matter of law, and the motion of the Secretary for summary judgment will be granted. For the same reasons, the motion of the Local for summary judgment will be denied.

The Secretary asks this Court to declare the May 1998 and March 1999 elections void and to direct the union to hold a new election for the position of Financial Secretary–Treasurer under the supervision of the Secretary. I believe it is unnecessary to void the March 1998 election, because the International and Local already have conceded that violations took place that nullified the election and warranted a rerun. Therefore, I will declare only the March 1999 election void and will order the Local to reopen nominations for the position of Financial Secretary–Treasurer and hold new elections for that position under the supervision of the Secretary of Labor.